753 So.2d 49 (2000)
George R. CAPLE, et al., Appellants,
v.
TUTTLE'S DESIGN-BUILD, INC., Appellee.
No. SC93549.
Supreme Court of Florida.
February 3, 2000.
*50 John M. Lynn of Lynn & Hanson, Homestead, Florida; and Sharon L. Wolfe and Nancy C. Ciampa, Miami, Florida, for Appellants.
Vance E. Salter and Christopher N. Johnson of Coll, Davidson, Carter, Smith, Salter & Barkett, P.A., Miami, Florida, for Appellee.
J. Thomas Cardwell, and Virginia B. Townes of Akerman, Senterfitt & Eidson, P.A., Orlando, Florida, for Florida Bankers Association, Amicus Curiae.
HARDING, Chief Justice.
We have on appeal Tuttle's Design-Build, Inc. v. Caple, 712 So.2d 1213 (Fla. 3d DCA 1998), wherein the Third District Court of Appeal declared section 702.10(2), Florida Statutes (1997), unconstitutional under the Due Process Clauses of the United States and Florida Constitutions.[1] We have mandatory jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons expressed below, we find the statute to be constitutional. Accordingly, we reverse the Third District Court's decision.

Facts
In 1996, Tuttle's Design-Build, Inc. (Tuttle) purchased a plant nursery from Caple Enterprises and George R. Caple (Caple) for a price of $17,000,000. See Tuttle's Design-Build, 712 So.2d at 1214. The purchase was financed by a bank, with three promissory notes to Caple Enterprises and one promissory note to George Caple individually. See id. Tuttle subsequently defaulted on one of the notes to Caple Enterprises and the note to Caple after paying more than $10,000,000 on the notes. See id. Caple filed a foreclosure action and requested an order to show cause pursuant to section 702.10(2), which allows a commercial mortgagee to request a court order requiring the mortgagor to continue payments pending litigation, post bond, or relinquish possession of the property. See id.
Tuttle answered, demanded a jury trial, and asserted various affirmative defenses. See id. Following the hearing, the court entered an order requiring Tuttle to pay Caple interest retroactive to the date of the request for the order to show cause and monthly interest payments thereafter. See id. The order provided Tuttle the alternative of posting a bond in the amount of $6,865,572, the unpaid mortgage principal and interest.[2]See id.
On appeal, Tuttle challenged the constitutionality of section 702.10(2) on two grounds: (1) it does not provide adequate due process safeguards to the mortgagor; and (2) it impermissibly conflicts with the Supreme Court's rulemaking authority. *51 See id. The Third District held that the statute was indeed unconstitutional under the United States and Florida Constitutions because it forces a mortgagor who wants to retain possession of the property to make payments without due process protection in the form of a mortgagee's bond or sequestration. See id. at 1215. The court further held that because it only provides for an excessive bond to stay those payments, the section impermissibly regulates matters of practice and procedure. See id. Caple appealed the Third District's ruling.
Caple argues that the statute neither violates the principles of due process nor encroaches upon the Supreme Court's rulemaking authority.[3] Caple asserts that the statute adequately protects the mortgagor's due process rights without requiring either a creditor's bond or that interest payments be made into the court registry. Further, Caple argues that the statute does not encroach on this Court's rulemaking authority because the procedural provisions at issue are substantially intertwined with substantive rights.
Tuttle argues, and the Third District Court agreed, that the statute violates the Due Process Clauses of the United States and Florida Constitutions and encroaches upon this Court's rulemaking authority. Relying on this Court's opinion in Gazil, Inc. v. Super Food Services, Inc., 356 So.2d 312 (Fla.1978), Tuttle asserts that the statute's failure to require a creditor's bond violates due process and thus renders it unconstitutional. Additionally, Tuttle argues that section 702.10(2) conflicts with (1) Florida Rule of Civil Procedure 1.610(b) by failing to require a creditor's bond even though it authorizes what is essentially a temporary injunction, and (2) Florida Rule of Civil Procedure 9.310 by requiring a mortgagor's bond that greatly exceeds the supersedeas bond provided by the rule. Thus, Tuttle reasons, section 702.10(2) encroaches upon this Court's rulemaking authority. We disagree with Tuttle's arguments.

Analysis
It is a fundamental rule of statutory construction that, if at all possible, a statute should be construed to be constitutional. VanBibber v. Hartford Accident & Indem. Ins. Co., 439 So.2d 880, 883 (Fla. 1983). In fact, this Court is bound "to resolve all doubts as to the validity of [the] statute in favor of its constitutionality, provided the statute may be given a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent." State v. Stalder, 630 So.2d 1072, 1076 (Fla.1994)(quoting State v. Elder, 382 So.2d 687, 690 (Fla.1980)).

Due Process
Beginning with this presumption of validity, our next step is to consider section 702.10(2) in light of the due process requirements of the United States and Florida Constitutions. It has long been established that flexibility is a concept fundamental to a determination of the adequacy of a statute's due process protections. See Mitchell v. W.T. Grant Co., 416 U.S. 600, 610, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). In fact, any concept of rigid procedure is incompatible with the elastic nature of due process. See id. As stated by the United States Supreme Court in Mitchell, "[t]he requirements of due process of law `are not technical, nor is any particular form of procedure necessary.'" Id. (quoting Inland Empire Dist. Council v. Millis, 325 U.S. 697, 710, 65 S.Ct. 1316, 89 L.Ed. 1877 (1945)). Furthermore, rather than articulating a laundry list of specific procedures required to protect due process, the United States Supreme Court has emphasized that the protection of due process rights requires balancing the interests of the parties involved. Connecticut v. Doehr, 501 U.S. 1, 2, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991).
*52 In Mitchell, the United States Supreme Court examined a Louisiana statute which allowed a mortgage or lien holder to obtain a writ of sequestration to forestall waste or alienation of encumbered property on an ex parte application. The Court held that the statute comported with due process because, as a whole, the statute adequately protected the parties' interests. See Mitchell, 416 U.S. at 610, 94 S.Ct. 1895. Although the Court was primarily concerned with judicial participation in the process, which it considered necessary to diminish the possibility of improper sequestration, it identified the aspects of the procedure that operated to protect the parties' interests and concluded the protection was sufficient. Specifically, the Court noted the following factors as protective of due process: (1) a writ will only be issued upon a judge's authority and only upon a verified affidavit; (2) the creditor must file a sufficient bond; (3) the debtor may immediately seek dissolution of the writ, placing the burden on the creditor to show grounds for issuance; and (4) if the creditor fails to show grounds for issuance, the court may order return of the property and assess damages.
In his concurrence, Justice Powell stated:
In my view, the constitutional guarantee of procedural due process is fully satisfied in cases of this kind where state law requires, as a precondition to invoking the State's aid to sequester property of a defaulting debtor, that the creditor furnish adequate security and make a specific factual showing before a neutral officer or magistrate of probable cause to believe that he is entitled to the relief requested. An opportunity for an adversary hearing must then be accorded promptly after sequestration to determine the merits of the controversy, with the burden of the proof on the creditor.
Mitchell, 416 U.S. at 625, 94 S.Ct. 1895 (Powell, J., concurring). Justice Powell's assessment of the statute reiterates the idea of a flexible test.[4] There is no indication in the opinion that a different configuration of procedures would provide insufficient due process protection. Instead, the Court focused on the procedures in sum.
In Gazil, this Court applied the Mitchell "totality test" to its assessment of whether section 78.068, Florida Statutes (Supp. 1976), Florida's prejudgment replevin statute, adequately protected due process. The statute contained five protective requirements enumerated by the Court as evidence of adequate due process protection.[5] The requirement that a creditor must post a bond to protect the debtor from mistaken repossession in order to obtain a writ was merely one of the factors considered by this Court. Because the protections provided by the statute sufficiently balanced the parties' interests, the Court found the statute to be constitutional.
Likewise, when viewed under this totality test, section 702.10(2) adequately *53 protects the parties' due process rights in that: (1) the mortgagee is required to serve a copy of the order to show cause on the mortgagor in a prescribed and protective manner;[6] (2) the mortgagor has the right to appear at the show cause hearing prior to any deprivation and to file affidavits or other papers, including affirmative defenses;[7] (3) the trial judge is authorized to order the mortgagor to continue payments only upon a finding that the mortgagee is likely to prevail in the foreclosure action;[8] (4) the mortgagor has the ability to stay an order to continue payments or repossession of the property by posting a bond.[9]
Tuttle argues primarily that because the statute lacks a creditor's bond prerequisite to a court order for continued payment, it fails to adequately protect the mortgagor against erroneous deprivation. However, the fact that the mortgagor has the right to appear and testify at the show cause hearing, combined with the requirement that the court is only authorized to order continued payment upon a finding that the mortgagee is likely to prevail on the merits, operate to minimize the possibility of such erroneous deprivation. Tuttle further argues that an appropriate alternative to requiring a creditor's bond would be to compel the mortgagor to make ordered payments into the court registry. As already stated, the statute adequately protects against erroneous deprivation, and statutorily requiring payment into the court registry is unnecessary. The mere lack of a statutorily required creditor's bond is an insufficient basis upon which to find the statute unconstitutional.
Moreover, there is nothing within the statute that prevents the trial judge from ordering that interest payments made by the mortgagee be paid into the court registry, nor is the trial judge prevented from ordering the mortgagee to post a creditor's bondthe measures Tuttle urges are necessary to protect its due process rights. The mortgagor is free to request that the court order payments to be made into the court registry pursuant to Florida Rule of Civil Procedure 1.600. See Doral Mobile Home Villas, Inc. v. Doral Home Owners, Inc., 661 So.2d 24, 25 (Fla. 2d DCA 1994). In fact, both parties in this case agreed that had Tuttle made such a request, Caple would have willingly agreed to the arrangement.

Infringement on this Court's Rulemaking Authority
Tuttle argues that section 702.10(2) impinges on this Court's rulemaking authority under article V, section 2, Florida Constitution. In order to ascertain whether there is an infringement on this Court's rulemaking authority, we must first determine whether the statute is substantive or procedural. If we find that the statute is "substantive and that it operates in an area of legitimate legislative concern," then we are precluded from finding it unconstitutional. VanBibber, 439 So.2d at 883.
The distinction between substantive and procedural law is neither simple nor certain; however, our prior decisions offer *54 some guidance. For example, in Haven Federal Savings & Loan Ass'n v. Kirian, we stated:
Substantive law has been defined as that part of the law which creates, defines, and regulates rights, or that part of the law which courts are established to administer. State v. Garcia, 229 So.2d 236 (Fla.1969). It includes those rules and principles which fix and declare the primary rights of individuals with respect towards their persons and property. Adams v. Wright, 403 So.2d 391 (Fla. 1981). On the other hand, practice and procedure "encompass the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion. `Practice and procedure' may be described as the machinery of the judicial process as opposed to the product thereof." In re Florida Rules of Criminal Procedure, 272 So.2d 65, 66 (Fla.1972) (Adkins, J., concurring). It is the method of conducting litigation involving rights and corresponding defenses. Skinner v. City of Eustis, 147 Fla. 22, 2 So.2d 116 (1941).
579 So.2d 730, 732 (Fla.1991) (emphasis added). See also Benyard v. Wainwright, 322 So.2d 473, 475 (Fla.1975) (stating that "[s]ubstantive law prescribes the duties and rights under our system of government," while "[p]rocedural law concerns the means and method to apply and enforce those duties and rights").
Section 702.10(2) was designed to protect the property rights of commercial creditors and debtors during litigated foreclosure proceedings. Before the enactment of section 702.10(2), a mortgagee did not have the right to receive mortgage payments or to protect the value of the security for that payment prior to the entry of a final judgment, a process that was often time-consuming and replete with delays.[10] This section creates the right to petition for that remedy and establishes the grounds upon which the petition may be granted. As the House bill analysis indicates, the rights of the mortgagee were a key factor in the enactment of this legislation:
The shorter time periods for foreclosure actions are proposed because of the need for the lender to reacquire the collateral in a timely manner and because of the costs associated with the delay.
Fla. H.R. Comm. on Judiciary, CS/HB 1159 (1993) Staff Analysis 13 (final Apr. 19, 1993)(on file with comm.). Therefore, we are of the view that section 702.10(2) creates substantive rights and any procedural provisions contained therein are intimately related to the definition of those substantive rights. We have consistently rejected constitutional challenges where the procedural provisions were intertwined with substantive rights. See Smith v. Department of Ins., 507 So.2d 1080, 1092 n. 10 (Fla.1987) (finding that when procedural sections are directly related to the substantive statutory scheme then those provisions do not violate the Separation of Powers Clause of the Florida Constitution). See also VanBibber (holding that statute that prohibited joinder of insurers was within the Legislature's power to regulate insurance industry, though it affected joinder of parties in courts).

Conclusion
Based on the strong presumption of statutory validity and the Mitchell totality test, we hold that section 702.10(2) comports *55 with due process and adequately protects the interests of each party. Additionally, because the statute creates substantive rights and any procedural provisions are directly related to the definition of those rights, we hold that section 702.10(2) does not infringe on this Court's rulemaking authority. Therefore, we find that the statute is constitutional under both the United States and Florida Constitutions.
Accordingly, we reverse the Third District Court's decision and remand for proceedings consistent with this opinion.
It is so ordered.
SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] U.S. Const. amend. V, XIV; art. I, § 9, Fla. Const.
[2] There is a factual dispute regarding the amount the trial court ordered Tuttle to pay. The Third District's opinion reflects the amount stated here.
[3] Art. V, § 2(a), Fla. Const.
[4] Tuttle argues that Mitchell and Gazil establish specific absolute requirements for protection of due process. However, we read neither case to implement such a rigid framework.
[5] Section 78.068's protective requirements were as follows:

(1) the law requires plaintiffs to show facts indicating a right to the property sought to be replevied, and the allegations must be verified;
(2) an application for replevin without notice must be presented to a judge, as opposed to a ministerial court official;
(3) the facts alleged must show the necessity for replevin, which is sufficiently shown if the debtor is in possession of the property and the applicant establishes that there is a possibility of waste, concealment or transfer of the property, or that the debtor is in default on his payments;
(4) the plaintiff must post a bond to protect the debtor from mistaken repossession; and
(5) the debtor must be entitled to an immediate hearing on the issue of possession.
Gazil, 356 So.2d at 313 (footnote omitted).
[6] See § 702.10(2)(a)(5); cf. Mitchell, 416 U.S. at 619, 94 S.Ct. 1895 (upholding statute allowing prejudgment seizure of property without notice and opportunity to appear as long as the statute otherwise adequately protects the parties' due process rights). Therefore, the predeprivation notice provided in section 702.10(2) is more protective of the parties' due process rights than that required by the U.S. Supreme Court.
[7] See § 702.10(2)(a)(3); cf. Mitchell, 416 U.S. at 619, 94 S.Ct. 1895.
[8] See § 702.10(2)(d); cf. Mitchell, 416 U.S. at 616, 94 S.Ct. 1895 (holding that judicial control of the procedure, as evidenced by the fact that only a judge has authority to issue the writ, and only upon a showing of the nature and amount of the claim from specific facts shown by a verified petition or affidavit, protects due process).
[9] See § 702.10(2)(d); cf. Unique Caterers, Inc. v. Rudy's Farm Co., 338 So.2d 1067, 1070 (Fla.1976) (holding that providing the defendant the opportunity to post a bond is protective of due process).
[10] As the Foreclosure Study Commission noted:

[T]here is often needless delay in the judicial foreclosure process from the time service of process is obtained until the entry of the final judgment of foreclosure by the Court. That delay stems from two sources: (a) the defendants who interpose frivolous defenses for the sole purpose of thwarting the entry of a final judgment and (b) the varied local practices of the courts in obtaining time for hearings, particularly for summary judgments and attorneys' fees.
Final Report of the Foreclosure Study Commission at 20 (Jan.1992)(on file with State Library of Florida).