826 So.2d 351 (2002)
In re Commitment of Joseph GREEN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-3118.
District Court of Appeal of Florida, Second District.
May 8, 2002.
*352 Elliott C. Metcalfe, Jr., Public Defender, and Christopher E. Cosden, Assistant Public Defender, Sarasota, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Dyann W. Beatty and Jennifer R. Haymes, Assistant Attorneys General, Tampa, for Appellee.
FULMER, J.
Joseph Green appeals the final judgment of commitment entered pursuant to Florida's Involuntary Civil Commitment of Sexually Violent Predators law, sections 394.910 to 394.931, Florida Statutes (1999). In this appeal, Green raises six issues, none of which requires reversal, but one of which merits discussion.
The issue we address is Green's contention that the results of certain actuarial instruments should not have been admitted into evidence. Green asserts that the psychologists retained by the State to evaluate him used certain actuarial instruments to attempt to predict his future sexual dangerousness. Green argues that the use of such instruments for the purpose of predicting future dangerousness is a new and novel scientific approach that does not meet the Frye[1] test for admissibility of scientific evidence, and thus the psychologists' testimony was inadmissible. The State responds that the instruments were just one component of the experts' opinions and that testimony concerning the use of the instruments was not subject to a Frye analysis. Alternatively, the State argues that the instruments are generally accepted in the relevant scientific community and do meet the Frye test for admissibility.
The trial court conducted a Frye hearing and denied Green's motion to exclude evidence derived from the use of actuarial instruments. In its order, the trial court found that: Green failed to show that the use of actuarial instruments is a new or novel scientific principle; the actuarial *353 tests involved have sufficient general scientific acceptance among the experts who deal with sexually violent individuals to satisfy the State's burden of proof; and Green's other objections regarding the accuracy of the tests go to the weight of the evidence and not their admissibility.
A trial court's ruling on a Frye issue is subject to de novo review, and a Frye error is subject to a harmless error analysis. Hadden v. State, 690 So.2d 573 (Fla.1997). In this case, we decline to resolve the issues of whether the actuarial instruments used in sexually violent predator commitment evaluations are subject to a Frye analysis and whether they meet the Frye test because, if admission of the actuarial evidence was error, we conclude that on the record before us, the error was harmless. We recognize that the State did not argue harmless error in this appeal. However, the State's failure to argue harmlessness does not preclude this court from applying the harmless error test. Section 59.041, Florida Statutes (2001), provides that no judgment shall be reversed because of the improper admission of evidence unless "in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice." Furthermore, appellate courts have an independent and inherent obligation to assess the effect of error on a verdict. Goodwin v. State, 751 So.2d 537 (Fla.1999).
At Green's jury trial, the State presented the testimony of three witnesses, all of whom are mental health experts. The State's first witness was Dr. Gregory DeClue, a licensed psychologist who testified that in his opinion Green presented a high risk for committing a sexually violent offense. He did not use any actuarial instruments in formulating his opinion about Green's risk of reoffending. Although he acknowledged that he did score one actuarial instrument, he did not reveal the score to the jury. He explained that, after additional training, he decided not to use actuarial instruments in any case and, therefore, did not use the instrument to form his opinion in Green's case.
The State's next witness was Dr. Karen Parker, a licensed psychologist who serves as the clinical director of the Florida Department of Children and Families Sexually Violent Offender Program in Tallahassee, Florida. Her involvement in Green's commitment proceeding was limited. She participated as a member of the multidisciplinary team that screens potential prison releasees and makes recommendations regarding whether the State should file a petition for civil commitment. She had no personal contact with Green. Instead, she referred Green's case to Drs. DeClue and Eric Jensen for evaluation and, based on their face-to-face interviews and written reports, recommended that the State seek a civil commitment order. Although Dr. Parker presented testimony about actuarial instruments in general, she presented no testimony regarding the use of actuarial instruments in Green's case.
The State's final witness, Dr. Jensen, is a licensed psychologist who testified that he does use actuarial instruments. However, he explained that he uses them only after he has completed his evaluation, arrived at his opinion, and prepared his written report. He reviewed the actuarial instruments he administered to Green and explained the results produced by each. He also elaborated about the shortcomings and deficiencies of each instrument and testified that he would never use them alone and that they cannot predict behavior of a particular individual. Of significance is his testimony that, after his face-to-face evaluation of Green and his review of the written materials and records provided to him, but before he administered any actuarial instruments, "I had a very *354 clear-it seemed almost open and shut to me-opinion about [Green's] likelihood of recidivating in a sexually violent manner." Dr. Jensen's opinion was that Green "presents a very high risk."
Green presented the testimony of two witnesses, both of whom are mental health experts. Both witnesses primarily testified about the use of actuarial instruments and why they believe these instruments lack sufficient reliability to be used in assessing risk of reoffending. They explained the deficiencies and limitations of various instruments and noted their lack of sufficient testing and peer review. Neither expert evaluated Green and, thus, offered no opinion concerning Green's risk of future dangerousness.
In sum, the evidence presented to the jury consisted of the testimony of five expert witnesses, only two of whom rendered an opinion regarding Green's risk of reoffending. One believed that the risk was "high" and the other found it to be "very high." Only one of these two experts actually administered and considered the results from actuarial instruments. However, he did so after he had completed the formulation of his "almost open and shut" opinion that Green presented a "very high risk." Green presented no countervailing opinions. And, while Green's counsel discussed actuarial instruments in his closing argument, the State did not. Nor were they mentioned in the trial court's instructions to the jury. On this record, we conclude that if the admission of testimony regarding the use of actuarial instruments by Dr. Jensen was error, it was harmless.
Affirmed.
BLUE, C.J., and PARKER, J., concur.
NOTES
[1] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).