848 So.2d 1220 (2003)
Herman McQUEEN, Appellant,
v.
STATE of Florida, Appellee.
No. 1D01-3794.
District Court of Appeal of Florida, First District.
July 8, 2003.
Nancy A. Daniels, Public Defender; Robert S. Friedman, Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General; Thomas H. Duffy, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
POLSTON, J.
Appellant Herman McQueen seeks the reversal of the Order of Adjudication and Commitment against him under the Jimmy Ryce Act, see §§ 394.910-394.931, Fla. Stat. (2001)(entitled "Involuntary Civil Commitment of Sexually Violent Predators"). Appellant argues that the Jimmy Ryce Act is unconstitutional in various ways, but the Florida Supreme Court has recently rejected those challenges. See Westerheide v. State, 831 So.2d 93 (Fla. 2002).
Appellant also argues that the trial court erred by denying his motion to exclude expert testimony concerning Appellant's likelihood to reoffend because the experts used actuarial instruments that do not meet the test under Frye v. United States, 293 F. 1013 (D.C.Cir.1923) for admissibility of scientific evidence. In this case, we decline to resolve the issues of whether the actuarial instruments used in sexually violent predator commitment evaluations are subject to a Frye analysis and whether they meet the Frye test because, if admission of the actuarial evidence was error, we conclude that on the record before us the error was harmless.[1]Green v. State, *1221 826 So.2d 351 (Fla. 2d DCA 2002); Williams v. State, 841 So.2d 531 (Fla. 2d DCA 2003).
AFFIRMED.
BOOTH, J., concurs; BROWNING, J., concurs in part and dissents in part with separate opinion.
BROWNING, J. CONCURS IN PART AND DISSENTS IN PART.
I concur with the majority opinion, because the essential element of the Florida Supreme Court's affirmance in Westerheide is that the State proved that the respondent had serious difficulty in controlling his behavior as defined by the United States Supreme Court in Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), and the same is true here. However, I dissent from the majority's failure to certify questions to the Florida Supreme Court that would hopefully resolve the doubt concerning the proper jury instructions to be used in this and similar cases. I do not believe that Westerheide determines the proper jury instructions to be given under Crane, which causes untenable confusion that can be clarified only by a clear pronouncement on the issue by the Florida Supreme Court.
Westerheide does not resolve the Crane requirement that a respondent in a Jimmy Ryce Act proceeding possess a "serious difficulty in controlling his behavior," as that standard relates to jury instructions. In Westerheide three justices set out the following rule:
[W]e do not find that Crane requires a specific jury instruction, but rather that there must be proof of "serious difficulty in controlling behavior" in order to civilly commit an individual as a sexually violent predator.
Westerheide, 831 So.2d at 107. If that decision were based on the concurrence of four justices, the issue would be settled. However, Justice Quince, who "reluctantly" concurred, did so in result only, leaving the jury-instructions issue unresolved as three justices dissented on the basis that the jury instructions were inadequate. Because of the justices' divergent positions in Westerheide, the degree of a defendant's difficulty in controlling his behavior as required by Crane has not been addressed by approved jury instructions.
It cannot be plausibly maintained, even though the State maintains to the contrary, that Justice Quince's concurrence, by necessity, embraces the view of the three justices in the majority. Justice Quince stated she agreed "with much of Justice Pariente's dissent," which was based in toto upon Justice Pariente's dissatisfaction with the jury instructions found acceptable by the three justices in the majority, but Justice Quince "... [could] not agree that the State did not demonstrate that Westerheide has serious difficulty in controlling his behavior, as that phrase has been used by the United States Supreme Court in Kansas v. Crane..." Westerheide, 831 So.2d at 113. I infer from Justice Quince's statements that she used a harmless error analysis in joining and forming the majority on the basis that the State's evidence proved that the requirements of Crane were met as to Westerheide's difficulty in controlling his behavior, notwithstanding any error in the jury instructions given. Accordingly, confusion prevails within the legal community concerning appropriate jury instructions, a situation that creates consequences that hinder the proper administration of justice.
Moreover, the situation is exacerbated by casting considerable doubt on well-reasoned decisions of this court that enunciate *1222 what I consider to be the correct jury instructions to be used in Jimmy Ryce commitments. See White v. State, 826 So.2d 1043 (Fla. 1st DCA 2002); Hudson v. State, 825 So.2d 460 (Fla. 1st DCA 2002); Converse v. Dept. of Children and Families, 823 So.2d 295 (Fla. 1st DCA 2002). If these decisions are to be affected by our Supreme Court, it should be done by a clear pronouncement rather than the uncertain one embodied in Westerheide.
I would attempt to resolve such unclear legal status created by Westerheide by posing certified questions to the Florida Supreme Court as to whether Jimmy Ryce Act commitments require jury instructions that contain substantially the following:
As used in these instructions, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the respondent to commit sexually violent offenses in a degree that causes the individual serious difficulty in controlling his behavior.
The term "likely to engage in repeat acts of sexual violence" means a person's propensity to commit acts of sexual violence in the future is more likely than not.
In conclusion, I concur with the majority as to the result here because the opinion comports with the Westerheide rationale, but I dissent from the majority's failure to certify on the basis of great public importance questions that would resolve the obvious confusion that exists within the legal community about jury instructions under Westerheide. I believe this court owes such a duty to the legal community in this type of situation.
For these reasons, I concur in part and dissent in part.
NOTES
[1] The experts relied on Appellant's admissions and performed clinical reviews in addition to using actuarial instruments. The Appellant, rather than the State, emphasized the results of the actuarial instruments in closing arguments.