870 So.2d 152 (2004)
In re COMMITMENT: John R. CARTWRIGHT.
John R. Cartwright, Appellant,
v.
State of Florida, Appellee.
No. 2D00-4663.
District Court of Appeal of Florida, Second District.
January 21, 2004.
Rehearing Denied March 26, 2004.
*154 Elliott C. Metcalfe, Jr., Public Defender, and Christopher E. Cosden, Assistant Public Defender, Sarasota, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jennifer R. Haymes and Marilyn Muir Beccue, Assistant Attorneys General, Tampa, for Appellee.
CANADY, Judge.
John R. Cartwright appeals an order civilly committing him for treatment as a sexually violent predator under the statute commonly known as the Jimmy Ryce Act, part V of chapter 394, Florida Statutes (2000). Because we conclude that Cartwright has raised no meritorious issues, we affirm the commitment order.
Cartwright raises certain meritless issues related to the conduct of his trial and the implementation of the Ryce Act. Cartwright also argues that the statutory framework for the involuntary civil commitment of sexually violent predators set forth in the Ryce Act violates various provisions of the Florida and United States Constitutions. Cartwright's challenge to the constitutionality of the statute is, however, largely foreclosed by the decisions in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (upholding Kansas statute providing for the involuntary commitment of sexually violent predators against substantive due process, double jeopardy, and ex post facto challenges), and Westerheide v. State, 831 So.2d 93 (Fla.2002) (upholding Ryce Act against double jeopardy, ex post facto, due process, and equal protection challenges).[1] *155 We specifically address three of the issues raised by Cartwright: (1) the claim that his commitment violates his contractual rights with the State under his previous plea agreement; (2) the claim that the provision of the Ryce Act permitting the admission of hearsay evidence is unconstitutional on various grounds; and (3) the claim that the instructions given by the trial court were inadequate.

I. PLEA AGREEMENT RIGHTS
Cartwright argues that the plea agreement he entered with the State which resulted in his adjudication for multiple counts of attempted capital sexual batteryprecluded the State from subsequently seeking his commitment under the Ryce Act. Cartwright contends that the State was contractually bound to release him from custody at the end of the incarceration portion of the sentence imposed on him pursuant to his plea agreement and that his commitment under the Ryce Act constitutes a violation of the plea agreement. Cartwright also argues that such a violation of the plea agreement was also a violation of the due process clauses of the Florida and United States Constitutions.
These claims are unwarranted. In Murray v. Regier, 872 So.2d 217, 219-20, 2002 WL 31728885 (Fla. Dec. 5, 2002), the supreme court rejected a similar claim that the civil commitment of the defendant there had "[violated] his constitutional right to due process."[2] The court specifically concluded that "any bargain that a defendant may strike in a plea agreement in a criminal case would have no bearing on a subsequent involuntary civil commitment for control, care, and treatment under the Jimmy Ryce Act." Id. at 224. Accordingly, any rights Cartwright might have under his plea agreement pertain only to the criminal sanctions against him. Any such rights are totally irrelevant to the subsequent separate civil proceedings against him under the Ryce Act. This is true whether Cartwright presents his claim as one based on his due process rights or on his contract rights. See Collie v. State, 710 So.2d 1000 (Fla. 2d DCA 1998); State v. McFarland, 28 Fla. L. Weekly D2298, ___ So.2d ___, 2003 WL 22259634 (Fla. 1st DCA Oct.3, 2003); Marsh v. State, 849 So.2d 1178 (Fla. 3d DCA 2003); Sandillo v. State, 842 So.2d 1018 (Fla. 5th DCA 2003); Sublett v. State, 842 So.2d 314 (Fla. 5th DCA 2003); Satz v. Runion, 838 So.2d 689 (Fla. 4th DCA 2003).

II. HEARSAY EVIDENCE
Hearsay evidence related to Cartwright's prior attempted capital sexual battery offenses was admitted by the trial court over Cartwright's objection. The provision of the Ryce Act permitting the *156 admission of hearsay evidence is found in section 394.9155(5), Florida Statutes (2000), which provides:
Hearsay evidence, including reports of a member of the multidisciplinary team or reports produced on behalf of the multidisciplinary team, is admissible in proceedings under this part unless the court finds that such evidence is not reliable. In a trial, however, hearsay evidence may not be used as the sole basis for committing a person under this part.
Cartwright argues that this statutory provision is unconstitutional because it violates the due process and equal protection clauses of the Florida and United States Constitutions, as well as the provision of the Florida Constitution vesting the supreme court with the authority to adopt procedural rules.
In Lee v. State, 854 So.2d 709 (Fla. 2d DCA 2003), this court recently addressed similar claims concerning the constitutionality of section 394.9155(5) and held that the provision is not unconstitutional. The court concluded that the defendant in that case had "not demonstrated the existence of any constitutional infirmity arising from section 394.9155(5)" and that "the protections afforded by the statute and the role of the trial court to exclude unreliable hearsay evidence suffice to meet constitutional requirements." Id. at 713. In reaching this conclusion regarding the merits of the "due process, equal protection[,] and separation of powers grounds," id., urged for the unconstitutionality of section 394.9155(5), this court relied on the reasoning of the California Supreme Court in People v. Otto, 26 Cal.4th 200, 109 Cal. Rptr.2d 327, 26 P.3d 1061 (2001), which held that the admission of hearsay evidence in an involuntary civil commitment proceeding did not violate the defendant's due process rights.
We will specifically address two aspects of the challenge made by Cartwright to the constitutionality of section 394.9155(5). First, we will briefly discuss Cartwright's reliance on Conner v. State, 748 So.2d 950, 960 (Fla.1999), which held that the statutory hearsay exception in section 90.803(24), Florida Statutes (1995), for out-of-court statements made by an elderly person describing acts of abuse and violence against the declarant was "facially violative of the defendant's constitutional right to confrontation." Second, we will turn to Cartwright's argument that section 394.9155(5) impermissibly invades the authority vested by article V, section 2(a), Florida Constitution, in the Florida Supreme Court to "adopt rules for the practice and procedure in all courts."

A. CONSTITUTIONAL RIGHT TO CONFRONTATION
Conner dealt with whether out-of-court statements would be admissible in a criminal prosecution. 748 So.2d at 954. The court's analysis in Conner focused on whether the challenged statutory provision for the admission of out-of-court statements violated the Confrontation Clause of the Sixth Amendment of the United States Constitution and the parallel provision in article I, section 16(a) of the Florida Constitution. The Confrontation Clauses of both the United States and Florida Constitutions are expressly limited to "criminal prosecutions." Conner is thus wholly inapposite to a civil commitment proceeding such as the one at issue here. But see Jenkins v. State, 803 So.2d 783, 785 (Fla. 5th DCA 2001) ("Obviously [section 394.9155(5)] must be construed in light of the Fourteenth Amendment right of confrontation.").

B. THE SUPREME COURT'S RULE-MAKING AUTHORITY
The second aspect of Cartwright's attack on the constitutionality of section *157 394.9155(5) presents a more complex issue. In support of his claim that the challenged provision is a matter of procedure and thus adopted by the legislature in violation of article V, section 2, of the Florida Constitution, Cartwright relies on the holding in Glendening v. State, 536 So.2d 212 (Fla. 1988), that a statute permitting the admission of out-of-court statements made by child sexual abuse victims was a procedural measure which could be applied to an offense that occurred prior to the effective date of the statute without violating the Ex Post Facto Clause. Cartwright also argues that "[n]o provision of the Florida Constitution, Florida Statute, or Florida decisional law allows the legislature to enact any law relating to practice and procedure."
In response, the State contends that the challenged statutory provision allowing the admission of otherwise inadmissible hearsay is "substantive in nature, not procedural, and ... is therefore within the legislative domain." The State relies on the decision in Booker v. State, 397 So.2d 910, 918 (Fla.1981), which held that the statutory provision permitting the consideration of otherwise inadmissible hearsay evidence in capital sentencing proceedings did not violate article V, section 2(a).
We conclude that Glendening's holding that a statutory provision was procedural for purposes of analysis under the Ex Post Facto Clause is inapposite to the issue raised by Cartwright and that the holding in Booker supports the conclusion that section 394.9155(5) does not violate the provision of article V, section 2(a), that "[t]he supreme court shall adopt rules for the practice and procedure in all courts." We also conclude that the challenged statutory provision should be upheld because it is "intimately related to" and "intertwined with" the substantive provisions of the Ryce Act. Caple v. Tuttle's Design-Build, Inc., 753 So.2d 49, 54 (Fla.2000). Finally, we conclude that Florida Rule of Civil Procedure 1.010, which authorizes legislative definition of "procedure" in "special statutory proceedings"such as those instituted under the Ryce Actfurther undercuts Cartwright's argument that the legislature exceeded the proper bounds of its authority in adopting section 394.9155(5).

1. Survey of the Case Law Interpreting Article V, Section 2(a)

We begin our analysis of Cartwright's claim under article V, section 2(a), with an acknowledgment that the parameters under that constitutional provision of the supreme court's authority and the concomitant limitations on the authority of the legislature have not been precisely defined. Generally, the case law interpreting article V, section 2(a), has quite reasonably focused on the distinction between procedure and substance[3] and has upheld legislative *158 measures which were determined to be substantive in nature. See, e.g., Benyard v. Wainwright, 322 So.2d 473 (Fla. 1975) (holding that statute prescribing circumstances under which sentences could be served consecutively was substantive measure which prevailed over inconsistent rule of court). But, as we will discuss below, there are also circumstances where a legislative provision which would be deemed procedural if viewed in isolation will nonetheless be upheld against a challenge under article V, section 2(a) because of the connection between that provision and substantive provisions adopted by the legislature. See Caple, 753 So.2d at 54; Fla. R. Civ. P. 1.010.
In Haven Federal Savings & Loan Ass'n v. Kirian, 579 So.2d 730, 732 (Fla. 1991), the supreme court described the differences between substantive and procedural measures:
Substantive law has been defined as that part of the law which creates, defines, and regulates rights, or that part of the law which courts are established to administer. It includes those rules and principles which fix and declare the primary rights of individuals with respect towards their persons and property. On the other hand, practice and procedure" encompass the course, form, manner, means, method, mode, order, process[,] or steps by which a party enforces substantive rights or obtains redress for their invasion. `Practice and procedure' may be described as the machinery of the judicial process as opposed to the product thereof." It is the method of conducting litigation involving rights and corresponding defenses.
(Citations omitted). Although the definitions of substance and procedure provided by the court afford some guidance, they fall short of setting forth a standard that can mechanically be applied to separate the procedural from the substantive. The definition of procedure set forth by the court might be understood as pointing to the conclusion that matters of evidence such as the admission of hearsay evidencewould ordinarily be considered procedural and not substantive. But, as we will discuss below, that conclusion would not be consistent with other pronouncements made by the supreme court on the issue.
The fact that a statutory provision could appropriately be labeled "procedural" does not necessarily mean that it violates article V, section 2(a). The court has refused to invalidate procedural provisions that are "intimately related to" or "intertwined with" substantive statutory provisions. Caple, 753 So.2d at 54. In Caple, the court rejected a challenge under article V, section 2(a), to a statute permitting mortgagees in certain mortgage foreclosure proceedings to obtain a prejudgment order requiring the mortgagor to pay interest. The court concluded that the challenged statute "creates substantive rights and any procedural provisions contained therein are intimately related to the definition of those substantive rights." The court observed that it had "consistently rejected constitutional challenges where the procedural provisions were intertwined with substantive rights." Id. (citing Smith v. Dep't of Ins., 507 So.2d 1080, 1092 n. 10 (Fla.1987) (holding that procedural sections of statute that were directly related *159 to the substantive statutory scheme did not violate article II, section 3, the Separation of Powers Clause of the Florida Constitution)).[4]
The supreme court has addressed the issue of whether rules of evidence are substantive or procedural by stating that they may fall on either side of the divide. Subsequent to the legislature's initial adoption of the Florida Evidence Code in 1976, the supreme court approved and adopted the statutory code as rules, pursuant to its authority under article V, section 2(a), "to the extent that [the code provisions] are procedural." In re Fla. Evidence Code, 372 So.2d 1369, 1369 (Fla.1979). In taking this action the court observed: "Rules of evidence may in some instances be substantive law and, therefore, the sole responsibility of the legislature. In other instances, evidentiary rules may be procedural and the responsibility of this [c]ourt." Id.
The supreme court has similarly approved and adopted various amendments made to the Evidence Code by the legislature. See In re Amendments to the Fla. Evidence Code, 825 So.2d 339 (Fla.2002); In re Fla. Evidence Code, 638 So.2d 920, 920 (Fla.1993) ("The Florida Evidence Code enacted by the Legislature is both substantive and procedural."); In re Amendment of Fla. Evidence Code, 497 So.2d 239 (Fla.1986); In re Amendment of Fla. Evidence Code, 404 So.2d 743 (Fla. 1981). The court has also specifically declined to approve and adopt an amendment made by the legislature to the Evidence Code. The court withheld its approval from section 90.803(22), Florida Statutes (2000), which allows for the admission of former testimony even when the declarant is available as a witness. In re Amendments to the Fla. Evidence Code, 782 So.2d 339 (Fla.2000). Those opposed to the adoption of the amendment were concerned that, among other things, "the amendment violate[d] a defendant's constitutional right to confront adverse witnesses." In explaining its decision, the court stated:
We agree that this Court should not adopt [section 90.803(22)] to the extent it may be procedural. However, we decline to address the substantive/procedural issue until such time as the issue comes before the Court in a true "case or controversy," because to do otherwise would effectively pass on the constitutionality of the legislation itself.
Id. at 341.
In State v. Abreu, 837 So.2d 400 (Fla. 2003), the court was presented with a case or controversy involving a challenge to the constitutionality of section 90.803(22), Florida Statutes (1999). The court held "that section 90.803(22) violates the Confrontation Clause of the Sixth Amendment in criminal proceedings to the extent that it allows the prosecutor to use at trial a witness's testimony from a previous judicial proceeding without a showing by the prosecutor that the witness is unavailable." Id. at 406. The court was not called on to address whether the statutory provision was a procedural measure which the legislature adopted in derogation of the court's authority under article V, section 2(a). But cf. Grabau v. Dep't of Health, Bd. of Psychology, 816 So.2d 701, 709 (Fla. 1st DCA 2002) (holding section 90.803(22) to be unconstitutional on various grounds, including *160 "as an infringement on the authority conferred on the Florida Supreme Court by article V, section 2(a)").
The supreme court has stated that a particular provision of the Evidence Code is a procedural measure. In State v. Page, 449 So.2d 813, 815 (Fla.1984), the court said, "Subsection 90.610(1), dealing with the use of prior convictions for the purpose of impeachment, clearly falls within the realm of `procedure.'" Subsection 90.610(1) had previously been approved and adopted by the court as a rule of evidence to the extent the statutory provision was procedural. In Page, the issue was not whether the statute was unconstitutional but how the statute should be interpreted. The Page court relied on its characterization of the statute as procedural to support its conclusion that the legislature's intent was "irrelevant" to the interpretation of the statute, and that "pursuant to article V of the constitution it is [the court's] sole responsibility to determine which crimes involve `dishonesty or false statement' for the purpose of impeachment." The Page court did not provide any guidance concerning the basis on which it had chosen to characterize section 90.610(1) as procedural rather than substantive. See also State v. McFadden, 772 So.2d 1209, 1213 (Fla.2000) (relying on Page's characterization of section 90.610(1) as procedural to support conclusion that it is the "[c]ourt's responsibility to determine what constitutes a prior `conviction' for purposes of impeachment under section 90.610(1)").
In Booker, the supreme court specifically addressed the issue of the admission of hearsay evidence in capital sentencing proceedings under a provision of the Florida statute governing such proceedings. The Booker court, relying on Dobbert v. State, 375 So.2d 1069 (Fla.1979), rejected the challenge under article V, section 2(a), to the provision in section 921.141, Florida Statutes (1977), permitting the admission of hearsay evidence. Booker, 397 So.2d at 918. In Dobbert, 375 So.2d at 1072, the court had held that a similar challenge under article V, section 2(a), was "without merit." See also Burns v. State, 699 So.2d 646, 653 (Fla.1997) ("We have ... repeatedly upheld section 921.141 against claims that the capital sentencing statute improperly regulates practice and procedure."). Neither Booker nor Dobbert contains a discussion of the basis upon which the court reached its decision.
The foregoing limited survey of the case law makes clear that "[t]he distinction between substantive and procedural law is neither simple nor certain." Caple, 753 So.2d at 53. The absence of a clear line of demarcation between substance and procedure is vividly illustrated by the supreme court's pronouncement that a particular statutory provisionunder challenge for invading the province of the court's rule-making authoritywas at once substantive and procedural: "The prohibition of the statute is surely procedural, just as it is substantive." Sch. Bd. v. Price, 362 So.2d 1337, 1339 (Fla.1978) (holding that statute prohibiting mention of insurance coverage in action against sovereignly immune defendant did not invade the supreme court's rule-making authority).
The complexity and uncertainty surrounding the substance/procedure distinction arises in part from the circumstance that the distinction is applied in different contexts in different ways. "Except at the extremes, the terms `substance' and `procedure' precisely describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn." Sun Oil Co. v. Wortman, 486 U.S. 717, 726, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988); see also In re Fla. Rules of *161 Crim. P., 272 So.2d 65, 66 (Fla.1972) (Adkins, J., concurring) ("The entire area of substance and procedure may be described as a `twilight zone[,]' and a statute or rule will be characterized as substantive or procedural according to the nature of the problem for which a characterization must be made."). Accordingly, a measure which is substantive for one purpose, may be procedural for another. For example, a statute may be deemed procedural for purposes of Ex-Post-Facto-Clause analysis, while the same statute is deemed substantive for purposes of analysis under article V, section 2(a).
Such was the case in State v. Maxwell, 647 So.2d 871 (Fla. 4th DCA 1995). The decision of the Maxwell court was based on both Bookeron which the State relies in the instant caseand Glendeningon which Cartwright relies. In Maxwell, the trial court had determined that section 921.141(7), Florida Statutes, which permits victim impact evidence in capital sentencing proceedings, was unconstitutional on several grounds, including for violating the prohibition on ex post facto laws and as a violation of the separation of powers. The Fourth District reversed the trial court's holding that the statute was unconstitutional. Firstrelying on the supreme court's decision in Bookerthe Maxwell court concluded that the challenged statute did not "infringe[] on the supreme court's exclusive right to regulate procedure." Maxwell, 647 So.2d at 872. Secondrelying on Glendeningthe Maxwell court concluded that the statute was properly applied to a crime that occurred before the statute became effective. In rejecting the ex post facto challenge to the statute, the court specifically held that the adoption of the statute was "not unlike a change in procedure such as that upheld in Glendening." Maxwell, 647 So.2d at 872-73. The Fourth District's decision was subsequently affirmed in a brief opinion by the supreme court. Maxwell v. State, 657 So.2d 1157 (Fla.1995).

2. Application of Booker and Dobbert

We conclude that Cartwright's reliance on Glendening is unwarranted and that the State's reliance on Booker is justified. Maxwell demonstrates beyond any doubt that Cartwright's reliance on Glendening is misplaced. Glendening's characterization of the statutory exception for child abuse victims' hearsay as procedural for purposes of Ex-Post-Facto-Clause analysis cannot properly be extended beyond that context. Glendening thus sheds no light on whether the hearsay provision in section 394.9155(5) violates article V, section 2(a).
The State correctly cites Booker as the supreme court decision in which the court's holding deals directly with circumstances most closely analogous to the circumstances of the instant case. In an area of the law fraught with much uncertainty, Booker and Dobbert afford the best guidance available in the cases decided by the supreme court. In Dobbert and Booker the supreme court specifically held that a legislative provision authorizing the admission of hearsay did not violate article V, section 2(a). And there are no cases in which the supreme court has held that a statute authorizing the admission of hearsay evidence was unconstitutional under article V, section 2(a). Under Booker and Dobbert, we conclude that Cartwright's argument that section 394.9155(5) violates article V, section 2(a), must be rejected. Just as the legislative authorization of the consideration of hearsay testimony in capital sentencing proceedings does not violate article V, section 2(a), so the legislative authorization of the consideration of hearsay testimony in Ryce Act proceedings does not violate that constitutional provision.

*162 3. Application of Caple

Under the Ryce Act, consideration of the facts related to the defendant's prior criminal adjudications for sexual offenses without the necessity of a full retrial of those prior cases is essential to the statutory scheme. The admission of reliable hearsay evidence under section 394.9155(5) thus falls within the scope of the principle articulated in Caple. The Ryce Act grants the state a substantive right to have sexually violent predators civilly committed for treatment. The statutory provision for the admission of hearsay is directly and closely tied to the definition of the state's substantive right to secure the commitment of sexually violent predators. Invalidation of the legislative provision permitting the consideration of reliable hearsay evidence in Ryce Act proceedings would fundamentally alter the nature of those proceedings and disrupt the substantive statutory scheme established by the legislature for the civil commitment of sexually violent predators. Because section 394.9155(5) is "intimately related to" and "intertwined with" the admittedly substantive provisions of the Ryce Act, it withstands scrutiny under article V, section 2(a). Caple, 753 So.2d at 54; see also Smith, 507 So.2d at 1092.

4. Application of Rule 1.010

The constitutionality of section 394.9155(5) is further supported by the supreme court's delegation to the legislaturepursuant to rule 1.010of authority to prescribe matters of procedure in "special statutory proceedings." Rule 1.010 provides, in pertinent part, "The form, content, procedure, and time for pleading in all special statutory proceedings shall be as prescribed by the statutes governing the proceeding unless these rules specifically provide to the contrary." (Emphasis added). See also Hayden v. Beese, 596 So.2d 1207, 1208 (Fla. 4th DCA 1992) (upholding constitutionality of rule 1.010 against claim that the rule unconstitutionally delegates judicial power). Rule 1.010 appears to be based on considerations similar to those expressed by the supreme court in Caple. Procedural provisions in special statutory proceedings will ordinarily be "intimately related to" or "intertwined with," Caple, 753 So.2d at 54, the substantive provisions enacted by the legislature.
Proceedings under the Ryce Act are special statutory proceedings. The Ryce Act contains a detailed scheme in which the legislature has made special provisions for adjudicating the status of sexually violent predators. Although there is no specific definition of "special statutory proceedings," it would be unreasonable to understand that term as excluding the Ryce Act from its scope. Cf. Gonzalez v. Badcock's Home Furnishings Ctr., 343 So.2d 7 (Fla.1977) (upholding replevin statute as a special statutory proceeding under rule 1.010 against challenge under article V, section 2(a)).
Rule 1.010 provides a delegation of authority to the legislature over matters of procedure in special statutory proceedings unless the Florida Rules of Civil Procedure "specifically provide to the contrary." There is nothing in the Florida Rules of Civil Procedure or any other rule of court that "specifically provide[s]" anything "to the contrary" of the provisions of the Ryce Act.
If the supreme court has adopted a rule that specifically governs a special statutory proceeding with respect to a procedural matter, any conflicting statutory provision must yield to the court-adopted rule. But the adoption by the supreme court of the provisions of the code of evidence as rules of court to the extent that those provisions are procedural does not supplant all statutory provisions *163 relating to the admission of evidence in special statutory proceedings. The supreme court's adoption of the provisions of the code of evidenceincluding its provisions relating to hearsaydoes not constitute a specific provision as to the contrary of the statutory provisions governing the admission of evidence in special statutory proceedings. Thus, even if we were to conclude that section 394.9155(5) is "procedural," rule 1.010 would require that we follow the "procedure ... prescribed by the statute[] governing the proceeding."

III. JURY INSTRUCTIONS
Cartwright also argues that instructions given by the trial court to the jury were inadequate because they did not comply with the standard for the involuntary civil commitment of sexually violent predators established by the Supreme Court in Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). In Crane, the Court held that substantive due process requires that in such commitment proceedings "there must be proof of serious difficulty in controlling behavior." Id. at 413, 122 S.Ct. 867.
At his trial, Cartwright requested that the jury be instructed that he could be involuntarily committed only if his mental abnormality or personality disorder "results in a volitional impairment rendering [Cartwright] dangerous beyond his control and makes it impossible for [Cartwright] to control his dangerous behavior." The trial court rejected Cartwright's request and instead gave an instruction that made reference to the requirement of a finding that Cartwright's mental abnormality or personality disorder made him "likely to engage in acts of sexual violence, if not confined in a secure facility for long-term control, care, and treatment."
This court has addressed a similar challenge to the adequacy of jury instructions in both Lee and Hale v. State, 834 So.2d 254 (Fla. 2d DCA 2002). In both cases, we relied on the decision of the supreme court in Westerheide in reaching the conclusion that the failure to give an instruction specifically requiring a finding of serious difficulty in controlling behavior was not reversible error. The court in Westerheide affirmed the commitment order on appeal despite the failure of the trial court there to give such a "serious difficulty in controlling behavior" instruction. 831 So.2d at 107. The defendant in Westerheide argued that the failure to give such an instruction was fundamental error. In Westerheide, there was no majority opinion of the court. The plurality opinion, joined in by three justices, however, did specifically conclude that an instruction similar to the instruction given in the instant case was sufficient. The Westerheide plurality reasoned that Crane "requires [not] a specific jury instruction but rather that there must be proof of `serious difficulty in controlling behavior' in order to civilly commit an individual as a sexually violent predator." Westerheide, 831 So.2d at 107. The plurality further concluded that the instruction given at Westerheide's trial conveyed the same meaning as "serious difficulty in controlling behavior." Justice Quince concurred in the result reached by the plurality but did not join in the plurality opinion. In her special concurrence, she criticized the overall framework of the Ryce Act but made no specific comments regarding the adequacy of the jury instruction.
In light of the perceived uncertainty regarding the precedential effect of the decision in Westerheide and the significant interests at issue, this court in Leewhile affirming the commitment ordercertified a question of great public importance to the Florida Supreme Court. We follow Lee and rely on the reasoning of the plurality *164 in Westerheide in rejecting Cartwright's challenge to the sufficiency of the jury instructions. We also follow Lee in certifying the following question to the Florida Supreme Court as one of great public importance.
MAY AN INDIVIDUAL BE COMMITTED UNDER THE JIMMY RYCE ACT IN THE ABSENCE OF A JURY INSTRUCTION THAT THE STATE MUST PROVE THAT THE INDIVIDUAL HAS SERIOUS DIFFICULTY IN CONTROLLING HIS OR HER DANGEROUS BEHAVIOR?

IV. CONCLUSION
For the reasons set forth above, the order committing Cartwright as a sexually violent predator under the Ryce Act is affirmed.
Affirmed; question certified.
STRINGER, J., concurs.
NORTHCUTT, J., concurs specially.
NORTHCUTT, J., Specially concurring.
I write separately only to emphasize that in Westerheide v. State, 831 So.2d 93 (Fla.2002), the supreme court did not decide the jury instruction issue addressed in Part III of Judge Canady's opinion in this case. The result reached by Judge Canady is dictated by Lee v. State, 854 So.2d 709 (Fla. 2d DCA 2003), and Hale v. State, 834 So.2d 254 (Fla. 2d DCA 2002), and I likewise am constrained to concur in it. In my view, however, the jury instructions in this case were inadequate for the reasons expressed in Justice Pariente's plurality "dissent" in Westerheide.
NOTES
[1] As will be further discussed in this opinion, in Westerheide there was no majority opinion. Westerheide has nonetheless been cited by this court and other district courts as deciding the constitutional challenges involved in the case. See Lee v. State, 854 So.2d 709 (Fla. 2d DCA 2003); Williams v. State, 841 So.2d 531 (Fla. 2d DCA 2003); Hale v. State, 834 So.2d 254 (Fla. 2d DCA 2002); McQueen v. State, 848 So.2d 1220 (Fla. 1st DCA 2003); Jackson v. State, 833 So.2d 243 (Fla. 4th DCA 2002). We also note that in State v. Goode, 830 So.2d 817, 819 n. 1 (Fla.2002), the supreme court stated: "We have upheld the constitutionality of the [Ryce Act] as to various challenges in Westerheide []." This statement in Goode appears in an opinion joined by a majority of the members of the courtincluding all the justices who did not join the plurality opinion in Westerheide.
[2] We note that a motion for rehearing is now pending in Murray and that the supreme court has stayed proceedings in Murray pending disposition of the appeals to the supreme court of the decisions in Harris v. State, 27 Fla. L. Weekly D946, ___ So.2d ___, 2002 WL 731699 (Fla. 1st DCA Apr.26, 2002), review granted, 854 So.2d 660 (Fla.2003); and Gentes v. State, 828 So.2d 1051 (Fla. 1st DCA 2002), review granted sub nom. State v. Harris, 854 So.2d 660 (Fla.2003). In Harris and Gentes, which were both decided prior to the issuance of the decision in Murray, the First District held that a plea agreement for prison time followed by probation bars subsequent proceedings under the Ryce Act and certified questions of great public importance concerning the impact of a plea agreement on Ryce Act proceedings.
[3] The supreme court has addressed the substantive/procedural distinction under article V, section 2(a) in a variety of contexts. See, e.g., Jackson v. Fla. Dep't of Corr., 790 So.2d 381, 385-86 (Fla.2000) (holding that "legislatively imposed `procedure'" requiring inmates seeking leave to proceed as indigents to file copies of prior complaint and judgments "is interfering with and intruding upon the procedures and processes of this [c]ourt and conflicts with this [c]ourt's own rule," and is thus "a usurpation of our exclusive rule[-]making authority"); Haven Fed. Sav. & Loan Ass'n v. Kirian, 579 So.2d 730, 732 (Fla.1991) (holding unconstitutional statutory provision requiring severance of counterclaims in mortgage foreclosure actions and stating that "[w]here this [c]ourt promulgates rules relating to the practice and procedure of all courts and a statute provides a contrary practice or procedure, the statute is unconstitutional to the extent of the conflict"); Van-Bibber v. Hartford Accident & Indent. Ins. Co., 439 So.2d 880 (Fla.1983) (holding that statute barring suits against insurer until judgment against insured had been obtained was substantive and did not unconstitutionally invade court's rule-making authority); Markert v. Johnston, 367 So.2d 1003,1005 (Fla.1978) (concluding that "plain language" of statute prohibiting joinder of insurers "provides rather clearly that the joinder of insurers is merely a procedural step in the conduct of a motor vehicle tort lawsuit," and that statute therefore invaded the rule-making authority of the court).
[4] Article II, section 3, provides that "[n]o person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." Article V, section 2(a), defines a specific power of the judicial branch that is subject to the general separation of powers provision in article II, section 3. If a particular statutory provision is consistent with article II, section 3, it would necessarily also be consistent with article V, section 2(a).