# Supreme Court of Florida

_____

No. SC19-107

_____

**IN RE: AMENDMENTS TO THE FLORIDA EVIDENCE CODE.**

May 23, 2019

PER CURIAM.

The Court, according to its exclusive rulemaking authority pursuant to article V, section 2(a) of the Florida Constitution, adopts chapter 2013-107, sections 1 and 2, Laws of Florida (*Daubert* amendments), which amended sections 90.702 (Testimony by experts) and 90.704 (Basis of opinion testimony by experts), Florida Statutes, of the Florida Evidence Code to replace the *Frye*[1] standard for admitting certain expert testimony with the *Daubert*[2] standard, the standard for expert testimony found in Federal Rule of Evidence 702.

---

1. *See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); *see also Bundy v. State*, 471 So. 2d 9 (Fla. 1985) (applying *Frye* standard); *Stokes v. State*, 548 So. 2d 188, 195 (Fla. 1989) (adopting *Frye* standard); *Hadden v. State*, 690 So. 2d 573, 577-78 (Fla. 1997) (adhering to *Frye* standard); *Marsh v. Valyou*, 977 So. 2d 543, 547 (Fla. 2007) (reaffirming adherence to *Frye* standard).

2. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

In *In re Amendments to Florida Evidence Code*, 210 So. 3d 1231, 1239 (Fla. 2017), at the recommendation of The Florida Bar's Code and Rules of Evidence Committee (Committee), which occurred by a close vote of 16-14, the majority of this Court previously declined to adopt the *Daubert* amendments, to the extent that they are procedural, solely "due to the constitutional concerns raised" by the Committee members and commenters who opposed the amendments. Without now readdressing the correctness of this Court's ruling in *DeLisle v. Crane Co.*, 258 So. 3d 1221, 1229 (Fla. 2018), we note that the decision determined that section 90.702 of the Florida Evidence Code, as amended by section 1 of chapter 2013-107,[3] is procedural in nature. *DeLisle* did not address the amendment to

---

3. Chapter 2013-107, section 1, Laws of Florida, amended section 90.702, Florida Statutes (2012), to read as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case; however, the opinion is admissible only if it can be applied to evidence at trial.

section 90.704 made by section 2 of chapter 2013-107.[4]  Therefore, the Court has

not determined the extent to which that amendment may be procedural.

As noted by *In re Amendments to Florida Evidence Code*, 210 So. 3d at

1236-37, the *Daubert* amendments were considered by The Florida Bar's Code and

Rules of Evidence Committee.  The Committee provided majority and minority

reports against and in favor of the Court's adoption of the *Daubert* amendments.

The Board of Governors of The Florida Bar approved the Committee's

recommendation, and extensive comments were received in response to the

published recommendation.  The Court held oral argument in the case.  Because of

the extensive briefing and arguments on this issue previously made to the Court,

and mindful of the resources of parties, members of The Florida Bar, and the

---

4.  Chapter 2013-107, section 2, Laws of Florida, amended section 90.704, Florida Statutes (2012), to read as follows:

The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, the expert at or before the trial.  If the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed, the facts or data need not be admissible in evidence.  Facts or data that are otherwise inadmissible may not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

judiciary, we revisit the outcome of the recommendation on the *Daubert* amendments without requiring the process to be repeated.

We now recede from the Court's prior decision not to adopt the Legislature's *Daubert* amendments to the Evidence Code and to retain the *Frye* standard. As Justice Polston has explained, the "grave constitutional concerns" raised by those who oppose the amendments to the Code appear unfounded:

> [T]he United States Supreme Court decided *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), in 1993, and the standard has been routinely applied in federal courts ever since. The clear majority of state jurisdictions also adhere to the *Daubert* standard. *See* 1 *McCormick on Evidence* § 13 (7th ed. June 2016 Supp.). In fact, there are 36 states that have rejected *Frye* in favor of *Daubert* to some extent. *See* Charles Alan Wright & Victor Gold, 29 *Federal Practice and Procedure* § 6267, at 308-09 n.15 (2016). Has the entire federal court system for the last 23 years as well as 36 states denied parties' rights to a jury trial and access to courts? Do only Florida and a few other states have a constitutionally sound standard for the admissibility of expert testimony? Of course not.
>
> As a note to the federal rule of evidence explains, "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. "*Daubert* did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)).
>
> Furthermore, I know of no reported decisions that have held that the *Daubert* standard violates the constitutional guarantees of a jury trial and access to courts. To the contrary, there is case law holding that the *Daubert* standard does not violate the constitution. *See, e.g., Junk v. Terminix Int'l Co.*, 628 F.3d 439, 450 (8th Cir. 2010) (rejecting legal merit of the constitutional claim "that the district court violated [appellant's] Seventh Amendment right to a jury trial by improperly weighing evidence in the course of its *Daubert* rulings"

and explaining that "Junk does not cite any case for the notion that a proper *Daubert* ruling violates a party's right to a jury trial"); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995) (rejecting claim "that allowing the trial judge to assess the reliability of expert testimony violates [the parties'] federal and state constitutional rights to a jury trial by infringing upon the jury's inherent authority to assess the credibility of witnesses and the weight to be given their testimony"); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997) (rejecting "argument that because the granting of summary judgment in this case was 'outcome determinative,' it should have been subjected to a more searching standard of review" and explaining that, while "disputed issues of fact are resolved against the moving party[,] . . . the question of admissibility of expert testimony is not such an issue of fact").

   Accordingly, the . . . "grave constitutional concerns" regarding the *Daubert* standard are unfounded.

*In re Amends. to Fla. Evidence Code*, 210 So. 3d 1231, 1242-43 (Polston, J., concurring in part and dissenting in part).  While we find Justice Polston's observations instructive in deciding to now adopt the Legislature's *Daubert* amendments, we do not decide, in this rules case, the constitutional or other substantive concerns that have been raised about the amendments.  Those issues must be left for a proper case or controversy.[5]

---

5.  *See In re Amends. to Fla. Evidence Code*, 210 So. 3d 1231, 1239 (stating that constitutional concerns about *Daubert* Amendment must be left for a proper case or controversy); *In re Amends. to Fla. Rules of Criminal Procedure—Rule 3.112 Minimum Standards for Attorneys in Capital Cases*, 820 So. 2d 185,193 (Fla. 2002) (stating that substantive concerns about comment to rule are more appropriately addressed in a true case or controversy than in a rules case).

Additionally, as outlined in the Committee minority report, the *Daubert* amendments remedy deficiencies of the *Frye* standard. Whereas the *Frye* standard only applied to expert testimony based on new or novel scientific techniques and general acceptance, *Daubert* provides that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589 (holding that the Federal Rules of Evidence superseded *Frye*). Moreover, also as argued in the minority report, the *Daubert* amendments will create consistency between the state and federal courts with respect to the admissibility of expert testimony and will promote fairness and predictability in the legal system, as well as help lessen forum shopping.

Accordingly, in accordance with this Court's exclusive rule-making authority[6] and longstanding practice of adopting provisions of the Florida Evidence Code as they are enacted or amended by the Legislature,[7] we adopt the amendments to sections 90.702 and 90.704 of the Florida Evidence Code made by chapter 2013-107, sections 1 and 2. Effective immediately upon the release of this

---

6. *See* art. V, § 2(a) Fla. Const.

7. *See DeLisle*, 258 So. 3d at 1223-24 (recognizing that, with very few exceptions, the Court has traditionally adopted, to the extent they are procedural, provisions of the Evidence Code as they are enacted or amended by the Legislature); *In re Amends. to Fla. Evidence Code*, 210 So. 3d at 1236 (same).

opinion, we adopt the amendments to section 90.702 as procedural rules of evidence and adopt the amendment to section 90.704 to the extent it is procedural.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, LAGOA, and MUÑIZ, JJ., concur.
LAWSON, J., concurs and concurs specially with an opinion, in which
CANADY, C.J., and LAGOA and MUÑIZ, JJ., concur.
LABARGA, J., dissents with an opinion.
LUCK, J., dissents with an opinion.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

LAWSON, J., concurring and concurring specially.

I fully concur in the majority opinion and write separately to address Justice Luck's contentions that: (1) we lack the authority to adopt this rule amendment now, and (2) we should not reconsider whether to codify the *Daubert* standard into our procedural rules until "we have a proper case or controversy," *see* dissenting op. at 1, in which to reconsider *DeLisle v. Crane Co.*, 258 So. 3d 1219, 1228-30 (Fla. 2018) (holding that the standard for use in determining the admissibility of scientific evidence is procedural and not substantive, such that the standard can only be validly adopted by rule of court, and holding the statute adopting the *Daubert* standard to be an unconstitutional encroachment on this Court's rulemaking authority).

With respect to Justice Luck's contention that we are only authorized to adopt or amend a rule of court pursuant to Florida Rule of Judicial Administration

2.140, I respectfully disagree that the majority is not following the multistep process set forth in rule 2.140. As explained in the majority's per curiam opinion, that process was followed here, with the result that the Court has had the benefit of Florida Bar recommendations, oral argument, and extensive public comments, pro and con. All that this Court is doing now is reconsidering its earlier administrative (i.e., non-adjudicative) decision not to adopt the proposed *Daubert* amendments. Nothing in the text of rule 2.140 prohibits this Court from doing so.

Perhaps more fundamentally, rule 2.140 sets forth the procedure "followed for consideration of rule amendments *generally*." Fla. R. Jud. Admin. 2.140(a) (emphasis added). Although this is the rule that others are directed to follow when requesting that we adopt or amend one of our rules—and that we *generally* follow as well—our internal operating rules expressly recognize our inherent constitutional authority to amend our own rules, on our own motion, at any time, providing:

> G. Rulemaking.
>
> 1. *General.* At the request of any justice, the Court, on its own motion, may adopt or amend rules. When the Court so acts, it generally will allow interested persons to file comments by a date certain. A specific effective date is usually designated by the Court. When the Court adopts or proposes a rule change in conjunction with a non-rule-amendment case, it will do so by means of an opinion in a separate case addressing only the rule amendment. The two opinions will reference each other and will be issued at the same time.

West's F.S.A. Sup. Ct. Manual Internal Operating P. § II. This Court has repeatedly followed rule II.G.1. in the past, adopting or amending rules on our own motion, at the request of a justice, without following the general procedure outlined in rule 2.140. *See, e.g.*, *In re Amendment to Rule 1-26 of Rules of Supreme Court Relating to Admissions to Bar*, 165 So. 3d 666, 666-67 (Fla. 2015) (amending Rules of the Supreme Court Relating to Admissions to the Bar on this Court's own motion); *In re Amendments to the Florida Rules of Civil Procedure—Mgmt. of Cases Involving Complex Litig.*, 15 So. 3d 558, 563 (Fla. 2009) (adopting an amendment to Florida Rule of Civil Procedure 1.440 on this Court's own motion, relying solely on our constitutional grant of rule-making authority); *In re Amendments To Florida Rule of Criminal Procedure 3.992—Criminal Punishment Code Scoresheets*, 972 So. 2d 862, 863 (Fla. 2008) (amending Florida Rule of Criminal Procedure 3.992, relying solely on our constitutional grant of rule-making authority in article V, section 2(a) of the Florida Constitution).[8] In each of these

---

8. We have bypassed the rule 2.140 process in numerous other cases, instead seeking advice from the Criminal Courts Steering Committee. *See, e.g.*, *In re Amendments To Florida Rule of Appellate Procedure 9.140*, 194 So. 3d 309, 309-10 (Fla. 2016) (amending Florida Rule of Appellate Procedure 9.140, relying solely on our constitutional grant of rule-making authority); *In re Amendments To Florida Rules of Criminal Procedure—Rule 3.113*, 139 So. 3d 292, 293 (Fla. 2014) (adopting Florida Rule of Criminal Procedure 3.113, relying solely on our constitutional grant of rule-making authority); *In re Florida Rules of Civil Procedure For Involuntary Commitment of Sexually Violent Predators*, 13 So. 3d 1025, 1027-28 (Fla. 2009) (adopting the Florida Rules of Civil Procedure for Involuntary Commitment of Sexually Violent Predators, relying solely on our

cases, this Court clearly did not declare an emergency and unequivocally did not follow rule 2.140.

In his dissenting opinion, Justice Luck points out that in these cited cases we requested input from groups of lawyers and judges before adopting rule changes. I have three responses. First, my point in citing these cases is to demonstrate that this Court has repeatedly acted on its own motion to enact or amend rules in the past, based solely on its constitutional authority and without following rule 2.140. Rule 2.140 requires referral to one of the rule committees listed in subsection (a)(3), which we did not do in any of these cases. Second, nothing in the constitution or rule II.G.1. states that we must seek input from others before exercising our exclusive rulemaking authority. In fact, rule II.G.1. expressly contemplates the exercise of our constitutional and exclusive rulemaking authority without input from others. Fla. S. Ct. Internal Op. Proc. II(G)(1) (explaining that when "the Court, on its own motion . . . adopt[s] or amend[s] rules . . . . it *generally will allow* interested persons to file comments") (emphasis added). Third, the Court has already received exhaustive input on this issue from the

---

constitutional grant of rule-making authority). Although the opinions in these cases do not recount the internal court process that initiated the rule change, our internal court records do. In each case, this Court directed a group of its own creation to propose language that would accomplish a rule change that this Court determined to be necessary or appropriate.

bench, bar, and public—explaining why we need not seek additional comment now. These cases, therefore, demonstrate how isolated the dissent is reading rule 2.140 as stripping this Court of its constitutional authority—or as severely self-limiting that authority such that we are powerless to act now without re-consulting one of the bar committees that we recognize by rule. Not only does no other member of our current court read rule 2.140 in this self-limiting fashion, these cases and rule II.G.1. demonstrate that prior courts have not read rule 2.140 as displacing the Court's constitutional power either.

Given that we have the constitutional authority to adopt or amend these rules, art. V, § 2(a), Fla. Const., and that rule II.G.1. expressly recognizes our inherent authority to do so *sua sponte*, there is no reason for (or value in) repeating the rule 2.140 process with respect to this particular rule change.

With respect to Justice Luck's contention that we should wait for a "proper case" to reconsider *DeLisle,* I would note that this Court routinely adopts evidence rules "to the extent that they are procedural"—without deciding whether they are procedural. *See, e.g.*, *In re Amendments to Fla. Evidence Code*, 53 So. 3d 1019, 1020 (Fla. 2011) (adopting the legislative amendments to the Evidence Code made since 2007 to the extent they are procedural); *In re Amendments to Fla. Evidence Code*, 960 So. 2d 762, 763 (Fla. 2007) (adopting the legislative amendments to the Evidence Code made since 2005 to the extent they are procedural); *In re*

*Amendments to Fla. Evidence Code—Section 90.104*, 914 So. 2d 940, 941 (Fla. 2005) (adopting the 2003 amendment to section 90.104(1)(b), Florida Statutes, to the extent it is procedural); *In re Amendments to Fla. Evidence Code*, 825 So. 2d 339, 340-41 (Fla. 2002) (adopting the legislative amendments to the Evidence Code made since 2000 to the extent they are procedural). This practical approach makes sense because it conforms our rules of evidence to the Code and avoids the uncertainty that would otherwise be created by years of litigation over the substantive/procedural issue. So long as the Legislature has adopted the provision, which was done here, no separation of powers concerns can flow from our decision to simply adopt the provision to the extent that it is procedural, and thereby avoid the uncertainty and attendant costs that we would impose on parties by continued litigation of the issue. For these reasons, it makes more sense to me to adopt the standard now without readdressing the correctness of this Court's ruling in *DeLisle*.

CANADY, C.J., and LAGOA and MUÑIZ, JJ., concur.

LABARGA, J., dissenting.

In 2017, following the recommendation of The Florida Bar's Code and Rules of Evidence Committee (Committee), this Court declined to adopt to the extent they were procedural the amendments to the Florida Evidence Code (Code)

implementing the *Daubert*[9] standard for admissibility of expert testimony. *In re Amendments to Fla. Evidence Code*, 210 So. 3d 1231, 1239 (Fla. 2017). In doing so, we cited "grave constitutional concerns." *Id.* In 2018, we reiterated that *Frye*[10] remains the appropriate standard in Florida state courts for evaluating expert testimony. *See DeLisle v. Crane Co.*, 258 So. 3d 1219, 1229 (Fla. 2018) ("We recognize that *Frye* and *Daubert* are competing methods for a trial judge to determine the reliability of expert testimony before allowing it to be admitted into evidence. Both purport to provide a trial judge with the tools necessary to ensure that only reliable evidence is presented to the jury. *Frye* relies on the scientific community to determine reliability whereas *Daubert* relies on the scientific savvy of trial judges to determine the significance of the methodology used."). Now, less than one year later, and without further input from the Committee or the public, this Court reverses course and adopts the *Daubert* amendments for use in Florida courts. I dissent because in my view *Frye* is the superior standard for determining the reliability of expert testimony.

*Daubert* and its progeny drastically expanded the type of expert testimony subject to challenge. Whereas *Frye* is limited to "new or novel scientific

---

9. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

10. *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

- 13 -

evidence," *Brim v. State*, 695 So. 2d 268, 271 (Fla. 1997), *Daubert* applies to "all

expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Of

course, if a change to the Code furthers justice for the parties, the fact that

significantly more testimony is subject to challenge and exclusion is irrelevant.

However, I do not believe the *Daubert* amendments will have this effect; rather, in

my view they will negatively impact constitutional rights. Indeed, the Committee,

in recommending we reject the *Daubert* amendments, concluded they would

undermine the constitutional right to a jury trial by precluding pure opinion

testimony:

> Experts routinely form medical causation opinions based on their experience and training. And there is always the possibility that two experts may reach dissimilar opinions based on their individual experience. However, a disagreement among experts does not transform an ordinary opinion on medical causation into a new or novel principle subject to *Frye.*

*Marsh* [*v. Valyou*], 977 So. 2d [543,] 548 [(Fla. 2007)] (citations omitted).
    Again citing multiple precedents, the Court explained:

> "[P]ure opinion testimony, such as an expert's opinion that a defendant is incompetent, does not have to meet *Frye*, because this type of testimony is based on the expert's personal experience and training. While cloaked with the credibility of the expert, this testimony is analyzed by the jury as it analyzes any other personal opinion or factual testimony by a witness."

*Id.* at 548 (alteration in original) (quoting *Flanagan v. State*, 625 So. 2d 827, 828 (Fla. 1993)).

- 14 -

The [Florida] Supreme Court addressed the fundamental, constitutional reason for its insistence on maintaining the utility of legitimate but competing expert opinion testimony to help juries decide cases on their merits:

> Trial courts must resist the temptation to usurp the jury's role in evaluating the credibility of experts and choosing between legitimate but conflicting scientific views. *See Castillo* [*v. E.I. Du Pont De Nemours & Co.*], 854 So. 2d [1264,] 1275 [(Fla. 2003)] ("[I]t is important to emphasize that the weight to be given to stated scientific theories, and the resolution of legitimate but competing scientific views, are matters appropriately entrusted to the trier of fact." (quoting *Berry* [*v. CSX Transp., Inc.*], 709 So. 2d [552,] 589 n.14 [(Fla. 1st DCA 1998)]); *Rodriguez v. Feinstein*, 793 So. 2d 1057, 1060 (Fla. 3d DCA 2001) (same). A challenge to the conclusions of . . . experts as to causation, rather than the methods used to reach those conclusions, is a proper issue for the trier of fact. *See U.S. Sugar* [*Corp. v. Henson*], 823 So. 2d [104,] 110 [(Fla. 2002)]; *Castillo*, 854 So. 2d at 1270, 1272, 1276; *Rodriguez*, 793 So. 2d at 1060 (recognizing that "to involve judges in an evaluation of the acceptability of an expert's opinions and conclusions would convert judges into fact-finders" to an extent not contemplated by Florida's *Frye* jurisprudence).

*Marsh*, 977 So. 2d at 549-50. Thus, if the Legislature's stated intent were to hold sway, litigants' constitutional right to trial by jury would be diminished.

*Code and Rules of Evidence Committee Three-Year Cycle Report at 7-8, In re Amends. to Fla. Evidence Code*, 210 So. 3d 1231 (Fla. 2017) (No. SC16-181) (some alterations in original). I agree with the Committee that the *Daubert* amendments create a significant risk of usurping the jury's role by authorizing judges to exclude from consideration the legitimate but competing opinion

- 15 -

testimony of experts. Where evidence is not based upon new or novel science, juries should be permitted to hear the testimony of experts, evaluate their credibility, and analyze and weigh their opinions and conclusions to reach a just determination on the issues presented by the case.

Further, the concurrence in *DeLisle*, in which I concurred, described how *Daubert* would negatively impact access to Florida courts:

> In addition to the constitutional concerns, the Committee believed that the amendment "would overburden the courts and impede the ability to prove cases on their merits." Comm. Report at 10. Citing numerous federal cases, the Committee explained that, because *Daubert* covers more subject areas and involves a multi-factorial analysis to determine admissibility, versus *Frye*'s simple "general acceptance" inquiry, "federal courts commonly must conduct multi-day *Daubert* hearings at substantial cost in time and money." *Id.* The Committee stated further:
>
>> Florida's judges have not been provided the level of resources and time available to their federal counterparts. The impact of *Daubert* procedures in Florida state courts would only worsen this disparity.
>> Litigants in all kinds of cases also bear an increased burden. Having to provide a lengthy expert report or answers to interrogatories, then have an expert witness prepare to testify in a deposition and a *Daubert* hearing, then defend a *Daubert* motion, all with the hope of being allowed to do it all over again in trial, is very expensive. *Daubert* "represents another procedural obstacle, another motion, another hearing, and another potential issue on appeal, all causing more delay and expense."
>> During [Committee] discussions, concerns were raised that litigation offering expert testimony under *Daubert* increases litigation costs, a prospect that only wealthy litigants can bear. Family and juvenile cases

were raised as an example, since these cases often involve parties with lesser financial capabilities who must somehow participate in *Daubert* hearings or surrender their rights on the merits due to a lack of resources to fund these evidentiary fights. Contingency cases were mentioned as another example, in cases where some litigants will be unable to find counsel to represent them due to increased expenses associated with the use of experts. A final example was presented in hourly rate cases when many litigants may be unable to afford to pursue the merits of their claims because of the expense of *Daubert* hearings guaranteed to come.

Comm. Report at 11-12 (citation omitted). [n.9]

[N.9.] A joint comment filed by past presidents of The Florida Bar and other members of The Florida Bar echoed this concern:

As many of the signers of this comment know personally, the *Daubert* Law has overburdened and, if adopted by this Court, will continue to overburden our already overstrained and overworked court system. The *Daubert* Law has resulted, and will result, in unwarranted delays, costs, and expenses in the administration of justice in every kind of case. These delays, costs, and expenses will be borne not only by the courts but by the litigants and will tend to have the most adverse impact on those who lack financial resources.

Joint Comment by Past Presidents of The Fla. Bar & Other Members of The Fla. Bar at 5, *In re Amends. to Fla. Evidence Code*, 210 So. 3d 1231 (No. SC16-181).

The concerns raised by the Committee do not merely exist in the abstract. Attorney Dan Cytryn, a lawyer with "more than 35 years [of experience] almost exclusively in the area of personal injury," urged this Court not to adopt the amendment because *Daubert* has

made "complex and moderately complex cases . . . more expensive to try." Comment by Dan Cytryn at 1, *In re Amends. to Fla. Evidence Code*, 210 So. 3d 1231 (No. SC16-181). Cytryn explained that, after *Daubert*, his law firm "has taken a much closer look at cases *that are meritorious*, and perhaps are worth under $100,000, but require litigation. [They] have turned down several meritorious cases because of the additional costs and time restraints that *Daubert* implicates." *Id.* at 2. While the impact on the workload of the trial courts or the difficulty in finding a lawyer should not be the sole consideration for determining whether a rule of procedure should be adopted, if adoption of the rule is at the expense of litigants' constitutional right to access the courts, then the impact on the workload provides a compelling reason to reject the rule.

258 So. 3d at 1233-34 (Pariente, J., concurring) (footnote omitted) (alterations in original). Although I recognize that constitutional challenges to Code amendments must be reserved for a proper case or controversy, I continue to support the compelling reasons articulated in the *DeLisle* concurrence, as well as the significant concerns raised by the Committee, as to why *Frye* should remain the evidentiary standard for admission of expert testimony in Florida courts. In sum, I firmly believe *Frye* more adequately protects the constitutional rights of the parties.

Accordingly, I dissent from the decision of the majority to adopt the *Daubert* amendments and recede from our 2017 decision.

LUCK, J., dissenting.

I wish I could join the majority opinion adopting as a procedural rule of evidence the legislature's *Daubert* amendment to section 90.702, Florida Statutes.

I really do.  I think our decision in *DeLisle v. Crane Co.*, 258 So. 3d 1219 (Fla. 2018), finding that the amendments to section 90.702 were an unconstitutional encroachment on our exclusive authority to adopt rules for the practice and procedure in all courts is wrong, and we should overrule it when we have a proper case or controversy.  But, for two reasons, I can't join the majority's opinion.  First, the majority opinion adopts the amendments to section 90.702 as procedural rules without following our procedure for adopting rules.  Second, the majority opinion rests on *DeLisle*'s erroneous holding that the *Daubert* amendment is a procedural rule, rather than a substantive law, that can be adopted by the court.  Because we must follow our own rules if we expect anyone else to and the legislature's *Daubert* amendment was a substantive change in the law, I reluctantly and respectfully dissent.

*We must follow our rules for adopting procedural rules.*

Florida Rule of Judicial Administration 2.140 is the rule for "Amending Rules of Court," and it "shall be followed for consideration of rule amendments generally."  Fla. R. Jud. Admin. 2.140(a); *see also In re Amends. to Fla. Rules of Jud. Admin.—New Rule 2.570*, No. SC17-1611, 2018 WL 472769, at *1 (Fla. Jan. 18, 2018) ("Rule 2.140 provides *the* procedures for amending rules of practice and procedure." (emphasis added)); *In re Fla. Rules of Jud. Admin.*, 389 So. 2d 202, 204 (Fla. 1980) (noting that the predecessor to rule 2.140 was "entirely rewritten to

- 19 -

codify *the* procedures for changes to *all* Florida rules of procedure" (emphasis added)).  The majority opinion does not follow it.

This is how the rule amendment procedure works.  An amendment "may be made by any person."  Fla. R. Jud. Admin. 2.140(a)(1).  The amendment is submitted to our clerk, who then refers it to one of the rules committees.  *Id.* 2.140(a)(2).  There's a special committee, called the code and rules of evidence committee, that considers amendments to the evidence code.  *Id.* 2.140(a)(3).  The rules of evidence committee will consider and vote on the proposed amendment.  *Id.* 2.140(a)(5).  If the committee accepts the amendment, it is part of a three-year cycle report that is sent to the bar's board of governors.  *Id.* 2.140(a)(5), (b)(1)-(2).  The board of governors solicits comments from the public and then considers and makes a recommendation on each proposal.  *Id.* 2.140(b)(2)-(3).  The committee and the board of governors then file with the court a report of the proposed rule changes and their recommendations.  *Id.* 2.140(b)(4).  The court considers comments to the proposed amendment, and may hear oral argument, before deciding whether to adopt it.  *Id.* 2.140(b)(5)-(7).

There are four, and only four, exceptions to this general procedure.  *Id.* 2.140(a) ("The following procedure shall be followed for consideration of rule amendments generally other than those adopted under subdivisions (d), (e), (f), and (g) . . . .").

- *Exception one—subdivision (d)*:  We may, with or without notice, "change court rules at any time if an emergency exists that does not permit reference to the appropriate committee."  *Id.* 2.140(d).  In emergency situations, we will "fix a date for further consideration of the change," and, in that time, allow any person to "file comments concerning the change, seeking its abrogation or a delay in the effective date."  *Id.*

- *Exception two—subdivision (e)*:  If the rules committee and the board of governors believe that a proposed amendment "is of an emergency nature," or sufficiently necessary to the administration of justice, they can recommend a change to the court outside the normal three-year cycle for submitting amendments.  *Id.* 2.140(e)(1)-(2).  The committee submits a report to the court, the proposed amendment is published, and the court may hear oral argument on the rule change.  *Id.*

- *Exception three—subdivision (f)*:  For non-emergencies, we "may direct special consideration of a proposal" that may be heard at any time outside the three-year reporting cycle.  *Id.* 2.140(f).  The committee files its report with the court, the proposed amendment is published, and the court may hear oral argument on the rule change.  *Id.*

- *Exception four—subdivision (g)*:  The court may amend at any time and with or without notice the rules in part II of the rules of judicial administration,

and rules 2.310 and 2.320, "without reference to or proposal from the Rules of Judicial Administration Committee." *Id.* 2.140(g)(1). If the court amends part II of the rules of judicial administration, or rules 2.310 or 2.320, without notice, then it will set a future date to consider the change and publish the proposal for comment by any person. *Id.* The court may hear oral argument on the proposed amendment. *Id.*

The majority opinion does not follow the general procedure that "shall be followed for consideration of rule amendments." *Id.* 2.140(a). Since we considered and decided this issue two years ago, *see In re Amendments to Fla. Evidence Code*, 210 So. 3d 1231 (Fla. 2017), the code and rules of evidence committee has not sent us a report to consider adopting the *Daubert* amendment as a procedural rule. The board of governors has not made a recommendation. And we haven't followed any of the publication and comment requirements in rule 2.140(b).

The majority opinion does not invoke any of the exceptions to the general procedure; it does not follow any of the special procedures required to invoke an exception; and none of the exceptions apply. The *Daubert* amendment was not an emergency when we considered it in 2017. *See id.* at 1235 ("We have for consideration *the regular-cycle report* of The Florida Bar's Code and Rules of Evidence Committee (Committee), concerning legislative changes to the Florida

Evidence Code and to section 766.102, Florida Statutes (2012)." (emphasis added) (footnote omitted)). The legislature enacted the change five years ago, ch. 13-107, §§ 1-2, Laws of Florida, and we have not treated the change as an emergency matter in all that time. The code and rules of evidence committee also has not submitted the *Daubert* amendment to us as an emergency matter. We have not requested, although it is our right to do so, that the committee reconsider the *Daubert* amendment outside the three-year cycle. And this is not an amendment to part II, and rules 2.310 and 2.320, of the rules of judicial administration, where we have authority to act on our own.

The majority opinion, instead, says that it is adopting the *Daubert* amendment "according to [our] exclusive rulemaking authority pursuant to article V, section 2(a)" of the state constitution. Majority op. at 1. Article V, section 2(a) certainly requires us to "adopt rules for the practice and procedure in all courts" in the state. Art. V, § 2, Fla. Const. To meet our constitutional obligation, we have established the procedure in rule 2.140 for the adoption, amendment, and abrogation of our procedural rules. We can always change the rulemaking procedure—and maybe we should in light of this case—but where we have a procedure in place to implement our constitutional obligation, we cannot use the same constitutional provision to undermine that very procedure.

If we could do that, then why have the procedure in the first place? Why go through the trouble of establishing a multistep process, appointing lawyers and judges to the rules committees, soliciting comments, getting the view of the board of governors, and having reports filed, when all we have to do is establish any rule we want, at any time, without input or adversarial testing? Having this multistep process doesn't make sense if all we have to do is wave our magic article V, section 2(a) wand, ignore rule 2.140, and establish any old rule we want.

Once a procedure for implementing a constitutional mandate is established, that procedure must be followed in order to invoke the mandate. Consider, for example, citizen initiative petitions. Article XI, section 3 provides that "the people" have "[t]he power to propose the revision or amendment of any portion or portions of this constitution by initiative." Art. XI, § 3, Fla. Const. The legislature has established procedures for implementing the initiative right. *See, e.g.*, § 101.161, Fla. Stat. (2018). For example, "[w]henever a constitutional amendment or other public measure is submitted to the vote of the people, a ballot summary of such amendment . . . shall be printed in clear and unambiguous language on the ballot." *Id.* § 101.161(1). "The ballot summary of the amendment . . . shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure." *Id.* "The ballot summary and ballot title of a constitutional amendment proposed by initiative shall be prepared by the sponsor

and approved by the Secretary of State . . . ." *Id.* § 101.161(2). If an initiative sponsor did not comply with the established procedures for initiative petitions, it would not be enough to cite the right in article XI, section 3. *See Browning v. Fla. Hometown Democracy, Inc.*, 29 So. 3d 1053, 1067 (Fla. 2010) (explaining that "[a]dditional explicit or implicit requirements provided by article XI, section[] 3" include those found in section 101.161 (footnote omitted)). Having the right is not enough if one does not follow the established neutral and generally applicable procedures for exercising that right.

Because we established mandatory procedures for exercising our rulemaking authority under article V, section 2(a), we are as required to follow them as everyone else. There is no exception for administrative ease, and there is no proviso for we've-heard-it-all-before. *See* Majority op. at 3-4 ("Because of the extensive briefing and arguments on this issue previously made to the Court, and mindful of the resources of parties, members of the Florida Bar, and the judiciary, we revisit the outcome of the recommendation of the *Daubert* amendments without requiring the process to be repeated."). We can refer the matter to the code and rules of evidence committee for out-of-cycle consideration; we can change the procedures by allowing summary consideration for repeat rules; and, in emergency situations, we can even act on our own and ask for comment; but we can't do what the majority opinion does here and ignore rule 2.140 altogether.

The concurring opinion gives two reasons for why we can ignore rule 2.140 altogether. First, the concurring opinion says that, although "others are directed to follow" rule 2.140 when requesting to amend the rules, we need not follow the rule because "our internal operating rules expressly recognize our inherent constitutional authority to amend our own rules, on our own motion, at any time." Concurring op. at 8. Like the little-known codicil in the Faber College constitution, the concurring opinion cites section II.G.1. of our internal operating procedures, which provides that "the Court, on its own motion, may adopt or amend rules." *Id.* (quoting Fla. S. Ct. Internal Op. Proc. II.G.1.). According to Westlaw, no court, including ours, has ever cited this language or any part of section II. Ever.

Also, section II.G.1., which is quoted in full in the concurring opinion, does not "expressly recognize our inherent constitutional authority to amend our own rules." Concurring op. at 8. It does not discuss, mention, cite, or refer to article V, section 2(a) or say anything about "inherent constitutional authority."

And even if our internal operating procedures could excuse our compliance with rule 2.140, they don't. We were careful to explain that the internal operating procedures "neither supplant[] any of the Florida rules of court procedure nor create[] any substantive or procedural rights." Fla. S. Ct. Internal Op. Proc. Intro. We have said that our internal operating procedures do not take the place of the

- 26 -

procedural rules, including rule 2.140, and do not create a procedural right to rulemaking that does not exist elsewhere.

In any event, there would be no need for rule 2.140 to write in exceptions to the general procedure for the supreme court if, as the concurring opinion suggests, we are not required to follow it. Rule 2.140(d) allows the court, "with or without notice," to "change court rules at any time if an emergency exists that does not permit reference to the appropriate committee." Fla. R. Jud. Admin. 2.140(d). Rule 2.140(f) allows us to "direct special consideration of a proposal" outside the three-year cycle. *Id.* 2.140(f). And rule 2.140(g) allows us to change some of the rules of judicial administration "without reference to or proposal from the Rules of Judicial Administration Committee." *Id.* 2.140(g)(1). Why write in these exceptions to the rulemaking procedure if rule 2.140 is only a suggestion for us to follow? Why would we create exceptions to a rule that wasn't mandatory? We wouldn't—it wouldn't make sense to do that—which is why we are not exempt from the command in rule 2.140 that the "procedure shall be followed."

Second, the concurring opinion, citing six cases,[11] says that we have "repeatedly followed rule II.G.1. in the past, adopting or amending rules on our

---

11. *In re Amends. to Fla. Rules of App. P. 9.140*, 194 So. 3d 309 (Fla. 2016); *In re Amend. to Rule 1-26 of Rules of S. Ct. Relating to Admissions to Bar*, 165 So. 3d 666 (Fla. 2015); *In re Amends. to Fla. Rules of Crim. P.—R. 3.113*, 139 So. 3d 292 (Fla. 2014); *In re Fla. Rules of Civ. P. for Involuntary Commitment of Sexually Violent Predators*, 13 So. 3d 1025 (Fla. 2009); *In re Amends. to the*

- 27 -

own motion, at the request of a justice, without following the general procedure outlined in rule 2.140. . . .  [T]his Court has repeatedly acted on its own motion to enact or amend rules in the past, based solely on its constitutional authority and without following rule 2.140."  Concurring op. at 9, 10.

I read these six cases differently.  None of them follow, discuss, mention, or even cite section II.G.1.[12]  None of them adopt or amend a rule on our own motion, and none of them adopt or amend a rule at the request of a justice.  *See Amends. to Fla. Rules of App. P. 9.140*, 194 So. 3d at 309-10 ("The Florida Supreme Court's Criminal Court Steering Committee (Steering Committee) filed a petition proposing amendments to rule 9.140(g) (Appeal Proceedings in Criminal Cases; Briefs).");  *Amends. to Fla. Rules of Crim. P.—R. 3.113*, 139 So. 3d at 293 ("[T]he Supreme Court's Criminal Court Steering Committee (Steering Committee) filed its petition in this case, proposing adoption of a new rule of criminal procedure,

---

*Fla. Rules of Civ. P.—Mgmt. of Cases Involving Complex Litig.*, 15 So. 3d 558 (Fla. 2009); *In re Amends. to Fla. Rules of Crim. P. 3.992—Crim. Punishment Code Scoresheets*, 972 So. 2d 862 (Fla. 2008).

12.  One of the cases cited by the concurring opinion has nothing to do with procedural rules.  In *Amendment to Rule 1-26 of Rules of Supreme Court Relating to Admissions to Bar*, we amended a bar rule under our "exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted" under article V, section 15 of the Florida Constitution.  165 So. 3d at 667.  Because we did not amend a procedural rule, the case did not implicate rule 2.140 or our procedural rulemaking authority under article V, section 2(a).  *See id.* ("We have jurisdiction.  *See* art. V, § 15, Fla. Const.").

rule 3.113 (Minimum Standards for Attorneys in Felony Cases)."); *Fla. Rules of Civ. P.—S.V.P.*, 13 So. 3d at 1025 ("This matter is before the Court for consideration of a proposal by the Florida Supreme Court Criminal Court Steering Committee (Committee) to adopt the Florida Rules of Civil Procedure for Involuntary Commitment of Sexually Violent Predators."); *Amends. to the Fla. Rules of Civ. P.—Mgmt. of Cases Involving Complex Litig.*, 15 So. 3d at 558-59 ("The Task Force on the Management of Cases Involving Complex Litigation (Task Force) has submitted proposed amendments to the Florida Rules of Civil Procedure for our consideration."); *Amends. to Fla. Rules of Crim. P. 3.992— Crim. Punishment Code Scoresheets*, 972 So. 2d at 863 ("The Supreme Court Criminal Court Steering Committee (Committee) has filed a petition proposing amendments to Florida Rule of Criminal Procedure 3.992."). None of them expressly hold that we can bypass the rule 2.140 process.

These cases cite the constitution as establishing our jurisdiction to hear the matter, not as the basis of our authority to amend the rules. *See Amends. to Fla. Rules of App. P. 9.140*, 194 So. 3d at 309 ("We have jurisdiction. *See* art. V, § 2(a), Fla. Const."); *Amends. to Fla. Rules of Crim. P.—R. 3.113*, 139 So. 3d at 293 (same); *Fla. Rules of Civ. P.—S.V.P.*, 13 So. 3d at 1025 (same); *Amends. to Fla. Rules of Crim. P. 3.992—Crim. Punishment Code Scoresheets*, 972 So. 2d at 863 (same). Acknowledging that we have jurisdiction to hear a rules case doesn't

- 29 -

translate to a holding that we are amending a rule based solely on our inherent constitutional authority. These cases did not meaningfully address our rulemaking authority, and thus the concurring opinion's reliance on them is misplaced.

The concurring opinion calls my reading of rule 2.140 "self-limiting" and "isolated." Concurring op. at 11. But it wasn't me who limited our authority to make procedural rules under article V, section 2(a). We did so when we created the rulemaking process in rule 2.140 "to codify the procedures for changes to all Florida rules of procedure," and "to update those procedures based on current practice." *Fla. Rules of Jud. Admin.*, 389 So. 2d at 204. All I've said is that once we codified the process of how we change our procedural rules, we have to stick to it or update the process again to catch up with current practice. But we can't ignore the process altogether and do whatever we want, whenever we want to do it, as the concurring opinion suggests.

Look at the procedure for invoking our jurisdiction to review a decision of a district court of appeal. Article V, section 3(b)(3) says that we may review any decision of a district court of appeal "that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law," art. V, § 3(b)(3), Fla. Const, but the constitution does not put a time limit on our review. The rules of appellate procedure do when they provide that, to invoke our discretionary jurisdiction, a notice must be filed "within 30 days

of rendition of the order to be reviewed." Fla. R. App. P. 9.120(b). We haven't read rule 9.120(b) as displacing our discretionary authority to review express and direct conflicts; we have read it as a procedural rule governing how our power is to be exercised. *See Jackson v. Jones*, No. SC18-1743, 2018 WL 6571192, at \*1 (Fla. Dec. 13, 2018) ("To the extent petitioner is seeking discretionary review, this petition is dismissed because petitioner failed to timely file a notice with the district court to invoke this Court's discretionary jurisdiction. *See* Fla. R. App. P. 9.120(b)."); *Curry v. State*, 36 So. 3d 655, 655 (Fla. 2010) ("Petitioner neither moved for rehearing of the August 12th opinion nor filed a notice to invoke this Court's discretionary review within 30 days of that opinion. As such, it appears to the Court that the notice was not timely filed. *See* Fla. Rs. App. P. 9.020(i) & 9.120(b). It is therefore ordered that the cause is dismissed on the Court's own motion, subject to reinstatement if timeliness is established on proper motion filed within 15 days from the date of this order.").

Rule 2.140 is no different. It doesn't displace our article V, section 2(a) procedural rulemaking authority; it is the procedural mechanism for exercising our constitutional authority.

This reading of rule 2.140 is hardly isolated. Since we created the rule 2.140 process, we have used it at least 284 times to consider new or amended procedural rules. That includes the ten times we used the rule 2.140 process to consider

adopting amendments to the evidence code.[13]  If any reading of rule 2.140 is

isolated, it is the concurring opinion's.  The concurring opinion believes we can

---

13. *See Amends. to Fla. Evid. Code*, 210 So. 3d at 1235 ("We have for consideration the regular-cycle report of The Florida Bar's Code and Rules of Evidence Committee (Committee), concerning legislative changes to the Florida Evidence Code and to section 766.102, Florida Statutes (2012)." (footnote omitted)); *In re Amends. to Fla. Evid. Code*, 144 So. 3d 536, 536 (Fla. 2014) ("We have for consideration the regular-cycle report filed by the Florida Bar Code and Rules of Evidence Committee (Committee) concerning recent legislative changes to the Florida Evidence Code (Code), *see* ch. 2011–183, § 1, Laws of Fla.; ch. 2012–152, § 1, Laws of Fla.; and to section 766.102(12) of the Florida Statutes, *see* ch. 2011–233, § 10, Laws of Fla."); *In re Amends. to the Fla. Evid. Code*, 53 So. 3d 1019, 1019 (Fla. 2011) ("We have for consideration the regular-cycle report filed by the Florida Bar Code and Rules of Evidence Committee (Committee) concerning recent legislative changes to the Florida Evidence Code (Evidence Code)."); *In re Amends. to the Fla. Evid. Code*, 960 So. 2d 762, 762 (Fla. 2007) ("We have for consideration the regular-cycle report of The Florida Bar Code and Rules of Evidence Committee (Committee), concerning recent legislative changes to the Florida Evidence Code made in chapter 2005-46, sections 1-2, and chapter 2006-204, section 1, Laws of Florida." (footnote omitted)); *In re Amends. to the Fla. Evid. Code—Section 90.104*, 914 So. 2d 940, 941 (Fla. 2005) ("We have for consideration a supplemental report of the Florida Bar Code and Rules of Evidence Committee (the Committee) concerning a recent amendment to section 90.104(1)(b) of the Florida Evidence Code made by chapter 2003-259, section 1, Laws of Florida. We have jurisdiction. *See* art. V, § 2(a), Fla. Const.; Fla. R. Jud. Admin. 2.130(c)."); *Amends. to the Fla. Evid. Code*, 891 So. 2d 1037, 1037 (Fla. 2004) ("We have for consideration the regular-cycle report of The Florida Bar Code and Rules of Evidence Committee (the committee), concerning recent legislative changes to the Florida Evidence Code made in chapters 2002-22, section 18; 2002-246, section 1; and 2003-259, sections 1, 2, and 3, Laws of Florida. See Fla. R. Jud. Admin. 2.130(c)."); *In re Amends. to the Fla. Evid. Code*, 825 So. 2d 339, 339 (Fla. 2002) ("We have for consideration the regular-cycle report of The Florida Bar Code and Rules of Evidence Committee (the committee), concerning recent legislative changes to the Florida Evidence Code made in chapters 2000-316, sections 1 and 2; 2001-132, section 1; and 2001-221, section 1, Laws of Florida. *See* Fla. R. Jud. Admin. 2.130(c)."); *In re Amends. to the Fla. Evid.* Code, 782 So. 2d 339, 339 (Fla. 2000) ("We have for consideration the

- 32 -

adopt or amend whatever procedural rule we want, on our own, at any time, and without publication, comment, or input from the bench and bar. But the cases relied on by the concurring opinion do not support such a reading. In them, we did not amend the rules on our own motion. We did so based on recommendations from committees made up of the bench and bar. The rules committees were involved in the amendment process. The concurring opinion's cases gave notice that we were thinking of amending the rules; asked for comments; and considered the comments before adopting or amending the rules. *See Amends. to Fla. Rules of App. P. 9.140*, 194 So. 3d at 309 ("The Florida Supreme Court's Criminal Court Steering Committee (Steering Committee) filed a petition proposing amendments to rule 9.140(g) (Appeal Proceedings in Criminal Cases; Briefs). . . . In considering the Court's referral, the Steering Committee included liaisons from the Criminal Procedure Rules Committee and the Appellate Court Rules Committee. . . . The Steering Committee first published its proposed amendment to rule 9.140(g) in the September 15, 2015, edition of *The Florida Bar News*. The Steering

---

quadrennial report of The Florida Bar Code and Rules of Evidence Committee (the Committee), concerning amendments to the Florida Evidence Code which were made by the Legislature over the past four years."); *In re Fla. Evid. Code*, 675 So. 2d 584, 584 (Fla. 1996) ("The Florida Bar has petitioned this Court to amend the Rules of Evidence to conform to statutory changes in the Evidence Code."); *In re Fla. Evid. Code*, 638 So. 2d 920, 920 (Fla. 1993) ("The Florida Bar has petitioned this Court to amend the Rules of Evidence to conform to statutory changes in the Evidence Code.").

Committee received two comments, and made changes to its proposal accordingly. . . . Upon consideration of the Steering Committee's report and the comments received by the Steering Committee, the Court amends rule 9.140(g) as follows."); *Amends. to Fla. Rules of Crim. P.—R. 3.113*, 139 So. 3d at 293 ("[T]he Supreme Court's Criminal Court Steering Committee (Steering Committee) filed its petition in this case, proposing adoption of a new rule of criminal procedure, rule 3.113 (Minimum Standards for Attorneys in Felony Cases). . . . Following publication of the proposed new rule by the Court, comments were filed by the Criminal Procedure Rules Committee and the Florida Public Defender Association. . . . [H]aving considered the Steering Committee's petition and the comments filed, we adopt Florida Rule of Criminal Procedure 3.113, as proposed by the Steering Committee."); *Fla. Rules of Civ. P.—S.V.P.*, 13 So. 3d at 1025 ("This matter is before the Court for consideration of a proposal by the Florida Supreme Court Criminal Court Steering Committee (Committee) to adopt the Florida Rules of Civil Procedure for Involuntary Commitment of Sexually Violent Predators."); *In re Amends. to the Fla. Rules of Civ. P.—Mgmt. of Cases Involving Complex Litig.*, 15 So. 3d at 558-60 ("The Task Force on the Management of Cases Involving Complex Litigation (Task Force) has submitted proposed amendments to the Florida Rules of Civil Procedure for our consideration. . . . The Task Force . . . consisted of twenty members, including judges and lawyers from throughout

Florida with experience in handling and managing complex litigation. . . . The proposed amendments were published in *The Florida Bar News*. The Court specifically asked the Florida Bar Civil Procedure Rules Committee (Civil Rules Committee) and the Family Law Rules Committee (Family Rules Committee) to comment on the proposed amendments. The Court received ten comments, including comments by the rules committees." (footnotes omitted)); *Amends. to Fla. Rules of Crim. P. 3.992—Crim. Punishment Code Scoresheets*, 972 So. 2d at 863 ("The Supreme Court Criminal Court Steering Committee (Committee) has filed a petition proposing amendments to Florida Rule of Criminal Procedure 3.992.").[14] None of that happened here.

---

14. The rules in each case were proposed by either the criminal court steering committee or the task force on management of cases involving complex litigation. Both the steering committee and the task force were directed and encouraged to work with the bar committees in amending the rules. *See In re Crim. Ct. Steering Cmte.*, Fla. Admin. Order No. AOSC12-33 (July 9, 2012) ("The Steering Committee is directed to establish the necessary liaison relationships with the appropriate Florida Bar and other Supreme Court committees. The Steering Committee is authorized to pursue such proposed rule amendments jointly with the appropriate Florida Bar procedural rules committees and jointly review any amendments or proposals and indicate whether the Bar committee concurs; disagrees; or recommends modifications, further study, or other action with regard to the proposed rule amendments, and thereafter file any proposed amendments and comments in petition form with the Clerk of the Florida Supreme Court."); *In re Task Force on Mgmt. of Cases Involving Complex Litig.*, Fla. Admin. Order No. AOSC06-53 (Sept. 19, 2006) ("The Task Force is also encouraged to seek advice and information from chief judges and other judicial officers, Bar rules committees, attorneys, and others, as appropriate. If the Task Force determines that amendments to existing rules or other development of new rules of court procedure are necessary, the Task Force is authorized to coordinate with any

After arguing that the majority opinion properly disregards rule 2.140 because of our internal operating procedures and past cases, the concurring opinion does a 180-degree turn and argues that the majority opinion follows the rulemaking process in rule 2.140 because more than two years ago, in February 2017, the court "had the benefit of Florida Bar recommendations, oral argument, and extensive public comments, pro and con." Concurring op. at 8. The court, the concurring opinion says, is merely "reconsidering" its February 2017 decision declining to adopt the *Daubert* amendments. *Id.* at 8. Nothing in the text of rule 2.140, according to the concurring opinion, prohibits us from revisiting a two-year-old decision, as long as the process was followed some time in the past. *Id.* at 8.

This is wrong for four reasons. First, the text of rule 2.140 says that opinions adopting proposals, as the majority opinion does here, "should be issued in sufficient time for the rule changes to take effect on January 1 of the year following the reporting year." Fla. R. Jud. Admin. 2.140(b)(7). Here, the code and rules of evidence committee submitted its report in February 2016 as part of the 2016 three-year cycle. That means the opinion adopting the proposal should have been issued within the year so that the rule could take effect on January 1, 2017.

applicable rules committees."). And indeed, as quoted in the string cite above, the rules committees participated in the rulemaking process.

- 36 -

Rule 2.140 does not contemplate a three-year opinion-writing process, as the concurring opinion proposes.

Second, the text of rule 2.140 does have a procedure for reconsidering decisions. "The supreme court may permit motions for rehearing to be filed on behalf of any person who filed a comment, The Florida Bar, any bar association, and the affected committee." *Id.* We have used the rehearing process to reconsider rules decisions in the past, *see, e.g.*, *In re Amends. to Fla. Evid. Code*, 144 So. 3d 536, 536 (Fla. 2014) ("The case is before the Court upon the motion for rehearing filed by the Florida Bar Code and Rules of Evidence Committee."), but no motion for rehearing was filed in this case.

Third, even if rule 2.140 allowed for opinions adopting rules three years after the cycle report was filed and authorized the court to reconsider rules cases two years after a decision was already made, we may only rehear cases where a motion has been filed within fifteen days of our order or decision. Fla. R. App. P. 9.330(a)(1). And we may reconsider an order or decision under narrow circumstances "but not more than 120 days after its issuance." *Id.* 9.340(a). Here, no rehearing motion was filed, and it has been more than 120 days since our order in *In re Amendments to the Florida Evidence Code* became final.

Fourth, the text of rule 2.140 requires that we have a fresh—rather than a three-year-old—report about proposed rule amendments from lawyers, judges, and

the public.  The committee considering the rule change must submit its report to the board of governors no later than June 15 of the year prior to the end of the three-year cycle, and publish the recommended amendments.  Fla. R. Jud. Admin. 2.140(b)(2).  The public submits its comments about the proposed changes no later than August 1, and the committee must respond to the comments no later than October 31.  *Id.*  The board of governors has to consider each proposal and vote whether to recommend it by December 15.  *Id.* 2.140(b)(3).  The committee's report must then be filed with the court no later than February 1 of the last year of the cycle.  *Id.* 2.140(b)(4).  If oral argument is necessary, the court is directed to set it in May or June.  *Id.* 2.140(b)(5).  The court is directed to issue its order adopting the proposed changes by January 1, the day after the last day of the three-year cycle.  *Id.* 2.140(b)(7).

It has been more than three years since the code and rules of evidence committee sent its cycle report on the *Daubert* amendment to the court.  In that time, lawyers, litigants, and judges have had another year of *Daubert* and two years of *Frye*.  Understanding their on-the-ground experience is critical to deciding whether we should adopt the *Daubert* amendment.  The concurring opinion sees no "value in" this.  Concurring op. at 11.  I do.

We created rule 2.140 so that we can have as much current feedback as possible from the lawyers, judges, and members of the public who will be affected

by the rules.  By short-circuiting the strict timeframes in the rulemaking process, and relying on a stale committee report from two Olympics ago, we do ourselves, the branch, and the bar a disservice.

If time is of the essence, or there's a concern for the administration of justice, as the concurring opinion suggests, we can refer rule amendments directly to a committee, they can be considered out-of-cycle, and they can even be treated as an emergency.  Fla. R. Jud. Admin. 2.140(d)-(f).  But there is no basis in rule 2.140 to ignore this process because we decided not to adopt the rule years earlier.

Following the concurring opinion's logic, rules cases are never final.  We can reconsider any evidentiary rule that we declined to adopt, so long as, at some point in the past, the proposed rule went through the rule 2.140 process.  In 2000, for example, the code and rules of evidence committee sent us its cycle report recommending that we adopt as procedural, among other rules, a recent legislative amendment that expanded the former-testimony hearsay exemption.  *In re Amends. to the Fla. Evid. Code*, 782 So. 2d 339, 339-40 (Fla. 2000).  The court declined to adopt the amendment to the extent it was procedural because of "grave concerns about the constitutionality of the amendment."  *Id.* at 342.  Can we go back, nineteen years later, and reconsider our earlier decision not to adopt the expanded

hearsay exemption without going through the rule 2.140 process, as the concurring opinion suggests we can with the *Daubert* amendment?

Another example: In 2014, the code and rules of evidence committee recommended in its regular-cycle report that we adopt as procedural the legislature's creation in section 90.5021 of a "fiduciary lawyer-client privilege." *Amends. to Fla. Evid. Code*, 144 So. 3d at 536. "We decline[d] to follow the Committee's recommendation to adopt the new provision of the Code because we question[ed] the need for the privilege to the extent that it [was] procedural." *Id.* at 537. Can we go back, five years later, and reconsider our decision to not adopt the fiduciary lawyer-client privilege without input from anybody?

We did reconsider the fiduciary lawyer-client privilege in 2018, but we did it the way it is supposed to be done. The code and rules of evidence committee sent us a recommendation, with the approval of the board of governors, that our 2014 decision "led to confusion for lawyers who represent fiduciaries, such as personal representatives, as well as for circuit court judges," and "ask[ed] this Court to reconsider its 2014 decision." *In re Amends. to Fla. Evid. Code—2017 Out-of-Cycle Report*, 234 So. 3d 565, 565-66 (Fla. 2018) ("We have for consideration the joint out-of-cycle report filed by the Florida Bar's Probate Rules Committee (FPR Committee) and the Code and Rules of Evidence Committee (CRE Committee) (collectively Committees) asking this Court to reconsider its 2014 decision not to

adopt, to the extent it is procedural, chapter 2011–183, section 1, Laws of Florida, which created section 90.5021, Florida Statutes (2017), (Fiduciary lawyer-client privilege) of the Florida Evidence Code."). Only "[a]fter considering the Committees' report, the comments submitted to the Committees and filed with the Court, and the Committees' response," did we change our mind and adopt the fiduciary lawyer-client privilege. *Id.* at 566.

What we didn't do was act on our own without notice or an opportunity for public comment, and we didn't rely on years-old stale information from rules committees. We have never done that before, and we shouldn't do it here without complying with the rules of judicial administration and appellate procedure.

*The legislature's* Daubert *amendment is not procedural, so it cannot be adopted by us as a procedural rule.*

I also must dissent because the majority opinion uses our article V, section 2(a) rulemaking authority to adopt the *Daubert* amendment based on the faulty premise that it "is procedural in nature." Majority op. at 2. It is not procedural. Section 90.702 is substantive, and we do not have the constitutional authority to adopt substantive laws as procedural rules.

While the burden is on us to "adopt rules for the practice and procedure in all courts," art. V, § 2(a), Fla. Const., the power to enact substantive laws rests with the legislature. *Id.* art. III, § 1 ("The legislative power of the state shall be vested in a legislature of the State of Florida . . . ."). Neither branch is allowed to

- 41 -

exercise the powers of the other, *id.* art. II, § 3 ("No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."), so we cannot use our rulemaking power to adopt substantive laws, and the legislature (with some exceptions) cannot adopt procedural rules. *See Caple v. Tuttle's Design-Build, Inc.*, 753 So. 2d 49, 53 (Fla. 2000) ("In order to ascertain whether there is an infringement on this Court's rulemaking authority, we must first determine whether the statute is substantive or procedural. If we find that the statute is 'substantive and that it operates in an area of legitimate legislative concern,' then we are precluded from finding it unconstitutional." (quoting *VanBibber v. Hartford Accident & Indem. Ins. Co.*, 439 So. 2d 880, 883 (Fla. 1983)); *Benyard v. Wainwright*, 322 So. 2d 473, 475 (Fla. 1975) ("The responsibility to make substantive law is in the legislature within the limits of the state and federal constitutions . . . . Procedural rules concerning the judicial branch are the responsibility of this Court, subject to repeal by the legislature in accordance with our constitutional provisions."). Although "[t]he distinction between substantive and procedural law is neither simple nor certain," *Caple*, 753 So. 2d at 53, we have said that "[s]ubstantive law prescribes the duties and rights under our system of government," while "[p]rocedural law concerns the means and method to apply and enforce those duties and rights." *Benyard*, 322 So. 2d at 475.

Section 90.702 establishes the right of litigants to introduce expert testimony in the courts. *See* § 90.702 ("[A] witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if" certain conditions are met.). The *Daubert* amendment establishes the right and sets out the litigant's duties in seeking to introduce the expert testimony. *See* ch. 13-107, § 1, Laws of Fla. (allowing expert testimony if "(1) [t]he testimony is based upon sufficient facts or data; (2) [t]he testimony is the product of reliable principles and methods; and (3) [t]he witness has applied the principles and methods reliably to the facts of the case"). The *Daubert* amendment tells us what kinds of expert evidence a party has the right to introduce at trial and defines the scope of that right. We have recognized that evidentiary rules may "be substantive law and, therefore, the sole responsibility of the legislature." *In re Fla. Evid. Code*, 372 So. 2d 1369, 1369 (Fla. 1979), *clarified*, 376 So. 2d 1161 (Fla. 1979).

Unsurprisingly, then, our courts have held that similar statutes establishing and defining the right of a party to introduce evidence at trial are substantive. Section 921.141(7), for example, gives the prosecution in a death-penalty case the right to introduce "victim impact evidence . . . designed to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death." In *Burns v. State*, we rejected the

defendant's argument that section 921.141(7) is a procedural rule that "improperly regulates practice and procedure." 699 So. 2d 646, 653 (Fla. 1997); *see also Looney v. State*, 803 So. 2d 656, 675 (Fla. 2001) (plurality opinion) ("Looney next argues that section 921.141(7), Florida Statutes (Supp. 1996), allowing the admission of victim impact evidence, is a usurpation of this Court's rulemaking authority vested in it by the Florida Constitution. We find Looney's argument is without merit." (footnote omitted) (citation omitted)); *Booker v. State*, 397 So. 2d 910, 918 (Fla. 1981) ("[W]e have held that section 921.141, Florida Statutes (1977), does not violate the requirements of article V, section 2(a), Florida Constitution, because it attempts to govern practice and procedure."); *Dobbert v. State*, 375 So. 2d 1069, 1071-72 (Fla. 1979) ("Dobbert argues that the death penalty statute is unconstitutionally violative of article V, section 2(a), Florida Constitution, because it attempts to govern practice and procedure . . . . We have considered each of these arguments and find them to be without merit.").

Also, in civil commitment proceedings for sexually violent predators, the parties have the right to admit "[h]earsay evidence, including reports of a member of the multidisciplinary team or reports produced on behalf of the multidisciplinary team . . . unless the court finds that such evidence is not reliable." § 394.9155(5), Fla. Stat. (2000). In *Cartwright v. State (In re Commitment of Cartwright)*, 870 So. 2d 152 (Fla. 2d DCA 2004) (Canady, J.), the committed party argued that the

- 44 -

right to admit hearsay evidence violated "the provision of the Florida Constitution vesting the supreme court with the authority to adopt procedural rules." *Id.* at 156. The district court concluded that the argument "that section 394.9155(5) violates article V, section 2(a), must be rejected." *Id.* at 161. "Just as the legislative authorization of the consideration of hearsay testimony in capital sentencing proceedings does not violate article V, section 2(a), so the legislative authorization of the consideration of hearsay testimony in Ryce Act proceedings does not violate that constitutional provision." *Id.*

The *Daubert* amendment is no different than the statutes allowing victim impact evidence in death-penalty cases and hearsay reports in Jimmy Ryce Act cases. Section 90.702, like the other two statutes, establishes the right of parties to introduce evidence in our courts by abrogating the common law prohibition against such evidence. *See* Leslie A. Lunney, *Protecting Juries from Themselves: Restricting the Admission of Expert Testimony in Toxic Tort Cases*, 48 SMU L. Rev. 103, 105 (1994) ("Because of these risks, the common law imposed a number of constraints on the admissibility of expert witness testimony, thus limiting the issues and the bases on which an expert would be permitted to testify."); Julie A. Seaman, *Triangulating Testimonial Hearsay: The Constitutional Boundaries of Expert Opinion Testimony*, 96 Geo. L.J. 827, 832 (2008) ("The Federal Rules of Evidence, enacted in 1975, facilitated this explosion of expert influence by

loosening the strict common law rules that had restricted expert witness testimony both in substance and in the procedures mandated for eliciting it."). The *Daubert* amendment, like the other two statutes, lays out the duties of the parties in introducing such evidence. If the death-penalty victim impact statute and the Jimmy Ryce Act hearsay statute are substantive, then so is section 90.702. It fits within our definition of substantive law and is consistent with our case law holding similar evidentiary statutes as substantive.

I understand we held in *DeLisle* that section 90.702 "is not substantive" and "does not create, define, or regulate a right." 258 So. 3d at 1229. But we were wrong[15] and acted without jurisdiction[16] in *DeLisle*, and I look forward to the day we have a proper case or controversy so we can revisit our holding. While *DeLisle* is our precedent until that day, I would not build upon its shaky foundation by relying on its erroneous holding so we can adopt a new procedural rule. We

_____

15. As just one example of how wrong our *DeLisle* opinion was, we didn't cite, discuss, quote, or acknowledge *Booker*, *Burns*, *Dobbert*, *Looney*, or *Cartwright*, even though they were quoted and discussed at length by the respondent and amici and are the prior decisions of this court and others most on point in deciding whether a rule of evidence is procedural or substantive. The court, instead, relied on non-evidentiary rules cases and *Glendening v. State*, 536 So. 2d 212 (Fla. 1988), which discussed the procedural/substantive divide for retroactivity purposes, but said nothing about our rulemaking authority under article V, section 2(a). Only by ignoring what was in front of us were we able to reach the conclusion that we did.

16. *See DeLisle*, 258 So. 3d at 1236-37 (Canady, C.J., dissenting).

- 46 -

shouldn't compound one error by, on our own initiative, shoveling another case on top of it.

The concurring opinion responds that we "routinely adopt[] evidence rules 'to the extent they are procedural'—without deciding whether they are procedural," and cites four cases to support the proposition.  Concurring op. at 11. I agree.

But the majority opinion does more than adopt the amendments to section 90.702 to the extent they are procedural.  The majority opinion "adopt[s] the amendments to section 90.702 *as procedural rules of evidence*."  Majority op. at 7 (emphasis added).  Not "to the extent they are procedural," but "as procedural rules of evidence."  *Id.*

The concurring opinion, in "fully concur[ring] in the majority opinion," Concurring op. at 7, is willing to double down on our mistake in *DeLisle* by treading on the legislature's turf and adopting a substantive rule as procedural.  I am not.  I'd rather fold and wait to play another hand.

Original Proceedings – Florida Evidence Code